**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BURROUGHS CORPORATION, Respondent.**

**No. 37, Docket 25075.**

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1958.

Decided Dec. 10, 1958.

---

2.  See also the many cases cited in the Cumulative Pocket Part, "File" and "Filing", all to the same general effect.

Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Alice Andrews, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Allan Seserman, New York City, for respondent.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and GALSTON, District Judge.

GALSTON, District Judge.

The National Labor Relations Board petitions for enforcement of an order of the Board against respondent based upon a finding that respondent had refused to bargain with a union following that union's certification as bargaining representative. The Board determined that a unit composed of respondent's service employees at its Hempstead, L. I., branch office was an appropriate unit for collective bargaining. The question presented to us was whether the Board's determination of this unit was correct. Respondent contends that only a region-wide or nationwide unit of service employees is appropriate. The decision and order sought to be enjoined are reported at 118 N. L. R. B. No. 161. The record before us includes the Board's decision that the service employees at Hempstead were an appropriate collective bargaining unit, and the order issued thereon directing an election. Jurisdiction of this court stems from the fact that the unfair labor practices considered by the Board occurred in Hempstead, L. I., New York.

Burroughs is a Michigan corporation engaged in the business of manufacturing, selling and servicing business machines and equipment. In addition to its home office in Detroit respondent has plants in Michigan and elsewhere throughout the United States, which constitute an operating division under the supervision of a Vice-President in Detroit. A fact stressed by the respondent is that its marketing division includes approximately 142 branch sales and service offices located throughout the United States. This marketing division is also headed by and under the general supervision of a Vice-President with headquarters in Detroit. A General Service Manager under this Vice-President supervises eight Regional Managers in the field, each of whom is in charge of service in one of the eight regions into which the United States is divided by the respondent for the service and sale of its products. Each regional office in turn supervises from fourteen to twenty branch offices, each of which is headed by a Branch Manager and provides service within a defined geographical area. The Hempstead office which was established in 1951 is one of the sixteen branch offices in the company's northeast region.

The field service men work at the customer's place of business. They report by telephone to the branch office each morning and throughout the day for assignments, attend meetings at the office,

come to the office for parts and occasionally work in the shop. The shop service men work primarily in the branch service shop and also at times in the field.

Though the home office establishes the wage and other policies uniformly applicable to its service men throughout the United States, all recommendations concerning the hire, promotion and discharge of the Hempstead employees are initiated by the Branch Manager and the Branch Service Manager.

As an important fact to be considered, it appears that unlike respondent's policy in other regions, wage increases which are recommended by the Branch Manager and Branch Service Manager within the range set by the home office require no further approval but are effected automatically by the regional office. The Branch Manager also, on his own initiative, may call for resignations by informing employees, who in his opinion lack aptitude or ability, that it is to their interest to look elsewhere.

The Hempstead office employs fourteen service employees who work under the supervision of the Branch Manager and the Branch Service Manager. These employees repair machines and equipment sold by the respondent within Nassau and Suffolk Counties, the service area assigned to the Hempstead branch. This petition has only the service men to consider. It is the respondent's emphatic position that the service men are all trained at the home office in Detroit and are qualified to perform uniform service functions throughout the United States. It appears, though, that despite the fact that some service men receive additional training and are capable of working in any of the branch offices, no employees were transferred from, and only one employee was transferred to the Hempstead office during the sixteen months prior to the hearing. Even within the entire northeast region the transfers from one branch to another during the aforesaid sixteen months' period were very infrequent.

The issue in the case is whether the respondent was entitled to appear before a different unit than that which was drawn from the regional area. Respondent contends that since the service men perform the same sort of service throughout the country, the unit should represent the entire country and not merely a section. At the time of the representation hearing none of the respondent's service employees was represented by the labor organization and the union had made no attempt to organize any employees other than those at the Hempstead branch, nor had any other branch employees advised the union that they wished to organize.

It thus happened that on June 29, 1956, two weeks after the representation hearing was closed, the respondent filed a motion requesting the Board to consider and incorporate as part of the record three prior representation proceedings involving respondent's branch offices in New York and Boston.

On November 15, 1956 the Board issued its decision and direction of election finding that the service employees at the Hempstead branch were "a cohesive and permanent group of employees with common interests who constitute an appropriate unit" for the purposes of collective bargaining.

On December 12, 1956 a majority of the Hempstead service employees voted in favor of representation by the union, and on December 20, 1956 the Regional Director certified the Union as the collective bargaining representative of the employees in the Union.

On January 3, 1957 the Union wrote respondent requesting a collective bargaining meeting. On January 25 the respondent refused to bargain, claiming that the Board's unit determination was invalid. At the hearing on April 2, 1957 respondent sought to support this contention by re-introducing the testimony of its northeast Regional Manager and the evidence it had presented through another witness, Frank G. Armstrong, an Assistant Director of the industrial relations of the corporation. This offer of proof was rejected by the Examiner on the ground that it presented no newly

discovered evidence and, moreover, because the unit issues had already been litigated in the representation proceeding.

The Examiner also denied respondent's motion made after the unfair labor practice hearing had closed that the record be re-opened to permit respondent to show that the Union had filed a petition with the Board on April 26, 1957 seeking to represent the service employees at respondent's New York City branch office.

The Board reached the conclusion that by the refusal of the respondent to bargain with the Union it had violated § 8 (a)(5) and (1) of the National Labor Relations Act (29 U.S.C.A. § 158(a)(5) and (1). The Board was of opinion that the issues had been fully litigated in the representation proceeding and accordingly were not properly the subject of re-litigation in the unfair labor practice proceeding. The Board also concluded that the possibility that the Union would seek to represent other branch office employees had "no bearing upon [its] determination of the appropriate unit at the Hempstead branch." It was also concluded by the Board that at the representation hearing the respondent had been afforded every opportunity to present any evidence it considered necessary to a proper determination of the unit, and the Board had cited, and thus the respondent was fully aware of, the Board's prior decisions to show that for the past eighteen years the Board had consistently found single branch units of respondent's employees appropriate for collective bargaining.

On October 30, 1957 a motion was made to set aside the Board's order and to re-open the representation hearing, which motion was denied by the Board on December 26, 1957, the Board noting that it had previously denied a similar request of respondent.

Thus the Board's order, the subject-matter of this pending petition, requires the respondent to cease and desist from refusing to bargain collectively with the Union. There is ample authority to support the Board's order. First, the Board's determination that respondent's Hempstead branch office service men constitute an appropriate unit was a reasonable exercise of the Board's discretion; see Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, at page 491, 67 S.Ct. 789, at page 793, 91 L.Ed. 1040, in which it was said:

> "The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed."

See also National Labor Relations Board v. American Steel Buck Corp., 2 Cir., 227 F.2d 927, 929, in which it was held that the courts must accept the Board's exercise of discretion "unless it is 'abused'."

The effort to establish a national unit certainly was not acceptable to the Board. Varying geographical conditions disclose as a matter of public knowledge varying industrial conditions, including the vital matter of living costs. So it was perfectly equitable for the Board to determine that the Hempstead unit would adequately and fairly determine the respective rights.

As against the contention of what amounts to a plea for a national unit the Board points out that for the past eighteen years the Board has found single branch units of respondent's service employees appropriate for bargaining. Similar branch units were established for service men of other business machine companies having big business with national operations substantially the same as those of Burroughs; see Dictaphone Corp., 78 N.L.R.B. 866; Remington Rand Division of Sperry Rand Corp., 116 N.L.R.B. 137. In Burroughs Adding Machine Co., 81 N.L. R.B. 1239, 1241 (footnote), it was observed that in the units established for service men of other business machine

companies with national operations, such determinations had not been disputed by the companies involved even if centralized management and personnel policies were like those of Burroughs. Other authorities relied upon by the Board and pointed out in its brief sustain its contention that the foregoing is settled law; see National Labor Relations Board v. Smythe, 5 Cir., 212 F.2d 664; Harris Langenberg Hat Co. v. N. L. R. B., 8 Cir., 216 F.2d 146; National Labor Relations Board v. Smith, 9 Cir., 209 F.2d 905; and National Labor Relations Board v. Stanolind Oil & Gas Co., 10 Cir., 208 F.2d 239.

Finally it may be observed that not only was the Board's determination that respondent's Hempstead branch office service men constituted an appropriate unit reasonable, but it also must be concluded that the Board's failure to exclude "what at best would be cumulative evidence" was well justified; American Newspaper Publishers Ass'n v. N. L. R. B., 7 Cir., 193 F.2d 782, certiorari denied 344 U.S. 812, 73 S.Ct. 10, 97 L.Ed. 632.

The petition to enforce the Board's order is granted.