**RETAIL CLERKS UNION, LOCAL NO. 1179, RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 20781.**

United States Court of Appeals Ninth Circuit.

March 28, 1967.

Jertberg, Circuit Judge, dissented.

Roland C. Davis, Philip Paul Bowe, Carroll, Davis, Burdick & McDonough, San Francisco, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Lawrence M. Joseph, Attys., N.L.R.B., Washington, D. C., Roy O. Hoffman, Director, N.L.R.B., San Francisco, Cal., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and BYRNE, District Judge.

HAMLEY, Circuit Judge.

This matter is before us on a petition to review and set aside an order of the National Labor Relations Board (Board), dismissing a complaint against John P. Serpa, Inc. (Serpa), the employer. The petitioner is Retail Clerks Union, Local No. 1179, Retail Clerks International Association, AFL-CIO (Union). The Board's decision and order are reported at 155 NLRB No. 12.

At issue in the Board proceedings was whether Serpa unlawfully refused to bargain, upon request, with the Union. Such a refusal would be an unfair labor practice under sections 8(a) (1) and (5) of the National Labor Relations Act (Act), 49 Stat. 452, 453, as amended, 29 U.S.C. § 158(a) (1) and (5) (1964). The Board, adopting the fact findings, credibility resolutions and conclusion of the Trial Examiner, found and concluded that Serpa had not unlawfully refused to bargain with the Union, and dismissed the complaint. The Union then instituted this review proceeding.

The Trial Examiner found the essential facts to be as follows: Serpa is a California corporation with retail automobile sales operations at Martinez and Concord, California, and a service operation at Martinez. In 1958, Serpa, along with a number of other automobile dealers, authorized the Contra Costa Automotive Association, Inc. (Association), to represent it in all matters respecting the negotiation, execution and administration of collective bargaining agreements. Since that time the Association and its members have dealt with other labor organizations who represent certain classifications of employees in a single Association-wide unit.

In an effort to organize the sales employees of automobile dealers in the area, the Union placed a picket line at or near Serpa's premises in Martinez on September 16, 1964. On September 24 and 25, five of Serpa's seven salesmen signed cards authorizing the Union to represent them for purposes of collective bargaining.

In the late afternoon of Friday, September 25, William C. Roddick, the Union's secretary-treasurer, accompanied by

Willard E. Atkinson, an organizer for the Union, and another union representative, came to Serpa's office in Martinez and met with Fred Peri, part owner and general manager of Serpa. After learning from Peri that Serpa employed seven salesmen, Roddick said that he had authorizations from five of them, designating the Union as their bargaining representative. Roddick then spread the authorization cards on the desk before Peri and presented Peri with a letter demanding recognition and a form for Peri's signature entitled "Recognition Agreement."[1]

Peri expressed no doubt as to the authenticity of the designations. Although Peri did not say so, he was apparently convinced that his employees had signed the cards displayed before him. While he might have had some vague thought that this was a matter to be handled by the Association, he made no clear statement to that effect.

Peri said that he did not understand just what the Union wanted him to do. Roddick replied that the Union wanted recognition as bargaining representative of the salesmen. Peri said that he was ignorant in such matters and that he would like to consult his attorney. Roddick said that the Union had no objection but urged Peri to do so immediately. Peri protested that it was nearly 6 p. m. on a Friday and that it was not likely he could reach counsel at that hour.[2]

Roddick then gave Peri a business card with the telephone number of the Union and with the home telephone number of Roddick written on its face. He asked Peri to telephone him after consulting the attorney. Peri promised to telephone the Union as soon as he had consulted his attorney, but Roddick was doubtful

that he would. The Union representatives then left.

Peri talked with his attorney on Saturday, September 26,[3] and following the attorney's advice did not call the Union, but waited to hear from it. However, the Union made no further effort to communicate with Serpa. Instead, on Tuesday, September 29, an attorney for the Union signed a charge against Serpa, alleging a refusal to bargain. The charge was filed with the Board on September 30, and Serpa received notice of it on October 1.

In the meantime, on September 30, Peri received a written notice from A. L. Bravo, Jr., one of those who had signed a card, saying in effect, that he had changed his mind and no longer desired to have the Union represent him. On or before that date Peri received a similar notification from another card signer, W. A. Hoskins. This left only three authorization cards outstanding—less than a majority of the seven salesmen. Serpa had not initiated any course of conduct designed to coerce Bravo, Hoskins or any other employee to withdraw his support from the Union.

On October 1, which was the day on which Serpa received notice of the Union charge, Peri met Union organizer Atkinson in Concord and they discussed the matter. At that time Peri stated that Serpa did not intend to sign the recognition agreement, and suggested that the Union should get in touch with the Association.

On the basis of these facts, the Trial Examiner further found that, when the five authorization cards were displayed to Peri on September 25, Peri entertained no reasonable doubt as to the Union's

1. The Trial Examiner concluded that the authorization cards were valid designations representing a majority of the employees in the bargaining unit.

2. The Trial Examiner expressed the view that Peri probably did not relish the prospect of bargaining with the Union

and was perhaps casting about to find some lawful or at least plausible reason for refusing to do so.

3. It was the Board, rather than the Trial Examiner, which made this particular finding.

representative status.[4] He concluded, however, that since the Union acquiesced in Peri's request to consult his lawyer and, before the Union again contacted him, two of the five authorization cards had been withdrawn without any encouragement by Serpa, Peri was entitled to base his response to the request for recognition on the facts as they existed on October 1.

Those facts, the Trial Examiner reasoned, demonstrated that the designation cards signed on September 25 did not reliably evidence the considered preference of the signers. The Trial Examiner concluded:

"Now to proclaim the Union to be the exclusive representative of Respondent's [Serpa's] salesmen upon the basis of such a fleeting and evanescent majority would not in my view serve to effectuate any of the policies or purposes of the Act."

Upon review, the Board accepted the Trial Examiner's findings of fact summarized above, and also concluded that Serpa had not unlawfully refused to bargain with the Union. However, the Board adopted a different rationale in arriving at that conclusion. The Board's rationale was based on this proposition: when the General Counsel seeks to establish a violation of section 8(a)(5) on the basis of a card showing, he has the burden of proving not only that a majority of employees in the appropriate unit signed cards designating the Union as its bargaining representative, but also that the employer in bad faith declined to recognize and bargain with the Union.

The General Counsel ruled the Board, did not sustain his burden concerning the bad faith factor because he failed to introduce any evidence which would support a finding that Serpa had completely rejected the collective bargaining principle or sought to gain time within which to undermine the Union and dissipate its majority. The Board made only the following comment with regard to the evidence summarized by the Trial Examiner:

"The fact that the Union placed the cards in front of the Respondent [Serpa] in such a way that Respondent probably saw the names and signatures cannot create the obligation to bargain or establish Respondent's bad faith."

We would agree with the Board's ultimate conclusion if this meager showing was the only evidence of Serpa's bad faith refusal to bargain. However, in view of the Board's adoption of the Trial Examiner's findings, conclusions and recommendations, as summarized above, and after our own examination of the testimony introduced at the hearing, we hold that the Board's conclusion was not warranted by the findings considered as a whole.

Contrary to what is implied by the above-quoted statement of the Board, the Trial Examiner made additional findings which would indicate that Serpa did not entertain a genuine doubt as to the majority status of his employees' representative until two employees changed their minds. Nor was any question ever raised concerning the circumstances under which the signatures were solicited or obtained. If Serpa had some bona fide doubt concerning the validity of these cards, he was entitled to the time necessary to verify them. The Trial Examiner found, however:

" * * * that on September 25 Peri was convinced that his employees had

---

4. The Trial Examiner stated that, were it not for the communications received by Peri from Bravo and Hoskins on or before September 30, " * * * I think that the case just referred to would dictate the decision here." The case "just referred to" was Snow & Sons, 134 N.L.R.B. 709, 710–711, enforced sub nom. Snow & Sons v. N.L.R.B., 9 Cir., 308 F.2d 687, from which decision the Trial Examiner quoted this language:

"the right of an employer to insist upon a Board-directed election is not absolute. Where, as here, the Employer entertains no reasonable doubt either with respect to the appropriateness of the proposed unit or the Union's representative status, and seeks a Board-directed election without a valid ground therefor, he has failed to fulfill the bargaining requirements under the Act."

signed the cards displayed before him and that although he may have had some vague thought that this was a matter to be handled by the Association, he made no clear statement to that effect."

At no time after the authorization cards were presented to Serpa has Serpa ever challenged the authenticity of the cards or asked for a check of the cards by a third party. Peri testified that the Union suggested he check the cards displayed before him against the payroll records, but Peri declined because he apparently had no objection to the cards as presented.

In Snow & Sons v. N.L.R.B., 9 Cir., 308 F.2d 687, this court held that unless an employer was motivated by a good faith doubt that the union represented a majority of the employees, it was an unfair labor practice for the employer to demand a Board election before negotiating with the union.[5] The Board sought to distinguish *Snow* on the ground that the employer in that case agreed to the check of cards against the payroll by a neutral third party and subsequently rejected the results of such a check and sought an election. However, when the employer makes his own examination of the authorization cards and is convinced of their identity and validity, as the Trial Examiner found that Serpa had done, a subsequent refusal to recognize the union is adequate affirmative evidence of a lack of good faith doubt as to majority status.[6]

The remaining question is whether an employer can delay recognition of a union after it is convinced that the union does hold a majority status with its employees. On Friday, September 25, after being shown the authorization cards and told the purpose, Peri requested and was allowed to consult with an attorney. He promised to do so as soon as possible and agreed to telephone the Union representative as soon as he had consulted with his attorney.[7]

Peri talked with his attorney on Saturday, September 26 and, according to the Trial Examiner, followed the attorney's advice to .wait to hear from the Union. The Union, failing to receive a promised telephone call from Peri, filed unfair labor practice charges against Serpa on Wednesday, September 30. On the same day Serpa learned that two of the card signers no longer desired to have the Union represent them. On October 1, Serpa met several Union officials and stated that he would not recognize the Union as the employees' representative.

---

5. This rule was recognized by the Board in H & W Construction Company, Inc. (1966 CCH NLRB par. 20,865) 161 NLRB No. 77, in the following language: " * * * the Serpa burden-of-proof rule is designed to assure, in implementation of Board policy, that an employer who in good faith withholds recognition because of a doubt of majority, though his doubt is founded on no more than a distrust of cards, may have an election to resolve that doubt, and will not be subject to an 8(a) (5) violation simply because he is unable to substantiate a reasonable basis for his doubt. But Aaron Bros., [(1966 CCH NLRB par. 20,437) 158 NLRB No. 108] also makes it apparent that the rule in Serpa is only an evidentiary one which is to be read as dovetailing with, rather than altering, the long-settled substantive principle that an employer may not in the absence of a good-faith doubt refuse to recognize a majority union."

See, also, N.L.R.B. v. Security Plating Co., 9 Cir., 356 F.2d 725, 727.

6. In Jem Mfg., Inc. (1966 CCH NLRB par. 20,128) 156 NLRB No. 62, the Board stated the following with regard to an employer's check of authorization cards: "The only relevant difference between Kellogg Mills [147 NLRB 342] and this case is that in the former a third person made the card check which satisfied the employer that the union represented a majority, whereas in this case the Employer himself examined the cards to determine the Union's majority. The difference is of no significance: *an employer's check certainly is as reliable as that by a third party.*" (Footnotes omitted; emphasis supplied.)

7. Since Peri never again raised the question of the validity of the authorization cards, he apparently wanted to determine the legal implications concerning these cards.

We cannot agree with the Trial Examiner's conclusion that Serpa did not breach its bargaining obligation because the Union's majority status was "fleeting and evanescent." Although Peri was entitled to consult with an attorney concerning the legal significance of these card authorizations, he was obliged to contact the Union and indicate his position as soon as possible after this consultation. This was particularly true in this case because Peri apparently had no doubt concerning the validity and identity of the cards and had promised to call the Union representative after he had conferred with an attorney.[8]

The court in Joy Silk Mills, Inc. v. N.L.R.B., 87 U.S.App.D.C. 360, 185 F.2d 732, stated that an employer had a right to refuse recognition to a union when motivated by a good faith doubt as to that union's majority status. The court further stated:

"When, however, such refusal is due to a desire to gain time and to take action to dissipate the union's majority, the refusal is no longer justifiable and constitutes a violation of the duty to bargain set forth in section 8(a) (5) of the Act." 185 F.2d at 741.

In *Joy Silk*, the coercive activities were undertaken by the employer just prior to the election in an effort to dissolve a union's majority status. But this is not the only kind of employer conduct which the Act was intended to prevent. The Trial Examiner in the case before us concluded that Serpa's delaying tactics were used with the hope that the Union "would just go away." In view of Peri's promise that he would telephone the Union representative after consulting with his attorney, Peri's failure to do so after he had spoken to his attorney was apparently designed to gain time for the employees to reconsider their decision to have the Union as their bargaining representative. While there was no evidence to indicate active impropriety on the part of Serpa, its undue delay in answering the Union's request for bargaining is inconsistent with the policy and purpose of section 8(a) (5) of the Act and evidences employer rejection of collective bargaining principles. See N.L.R.B. v. Howe Scale Company, 7 Cir., 311 F.2d 502, 505.

Reversed and remanded for further proceedings consistent with this opinion.

JERTBERG, Circuit Judge (dissenting):

I would deny the petition to review and set aside the Board's order. In my view the evidence is woefully insufficient to establish that the employer's failure to recognize the Union was motivated by bad faith.

---

8. There is additional testimony of Mr. Peri that the alleged repudiations of the two salesmen were not a factor in Serpa's decision not to recognize the Union's majority status. At the hearing Peri testified that the receipt of the two withdrawal letters by the salesmen "had no bearing whatsoever" on the fact that Serpa did not recognize the Union.