NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

The RICHMAN BROTHERS COMPANY
and Richman Brothers Madison, Inc.,
Respondent.

No. 16159.

United States Court of Appeals
Seventh Circuit.

Dec. 13, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Richard Adelman, Atty., N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Paul J. Spielberg, Atty., N.L.R.B., Washington, D. C., for petitioner.

Frank C. Heath, Cleveland, Ohio, for respondent, Jones, Day, Cockley & Reavis, Cleveland, Ohio, of counsel.

Before HASTINGS, Chief Judge, and CASTLE and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

National Labor Relations Board petitions pursuant to 29 U.S.C.A. § 160(e) for enforcement of its order compelling respondent Richman Brothers Company to bargain with the Amalgamated Clothing Workers of America, AFL–CIO as the bargaining representative of the alteration room employees in respondent's two Madison, Wisconsin, stores.

Respondent Richman Brothers Company manufactures and retails clothing in several states, and operates a store at 17 South Pinckney Street in Madison. Respondent Richman Brothers Madison, Inc. is a wholly-owned subsidiary of Richman Brothers Company and operates a store at 633 Gilbert Road in Madison. Employees at both stores are covered by the same medical insurance, life insurance, and retirement plans, the cost of which is borne by Richman Brothers Company. Both stores receive their merchandise from the parent company's home office, and retail prices at both stores are determined at the home office. Both stores are supervised by the same district manager. The distinction of cor-

porate form may therefore be disregarded.

In April of 1965, respondent employed Lucille Fentress as a seamstress and John Henderson, a university student, as a porter-presser at its Pinckney Street store, and employed Buna Stewart as a seamstress at its Gilbert Road store. At both stores the alteration room employees were physically separated from the sales floor.

On April 12, 1965, Harold Wyss, a business agent for the union, began organizing the alteration room employees in respondent's two Madison stores. Mrs. Fentress and Mrs. Stewart signed authorization cards on that day, and Henderson signed the following day.

On April 15, Wyss sent identical telegrams to the local managers of the two stores advising them of the union's majority and demanding recognition as the bargaining agent of "all tailor shop (alteration room) employees in said stores * * *."

On April 15 and 16, each of the three employees was approached by his store manager and asked whether he had joined the union. Each made an affirmative response.

On April 16, Wyss met the two store managers and was informed by them that they lacked the authority to act. The following day Wyss received letters from Marvin Shusterman, respondent's district manager, advising him that the union's request for recognition was under consideration. Shusterman indicated to Wyss that he would be on vacation during the week of April 18.

At approximately the same time, Shusterman discussed the union's request with George Richman, respondent's president, in Cleveland, by telephone. According to Shusterman, the two discussed the appropriateness of the bargaining unit requested and concurred in the belief that the employees would reject the union if a secret ballot were held.

On April 27, Mrs. Stewart notified the manager of the Gilbert Road store that she was withdrawing from the union.

On the evening of that day Shusterman, who had returned from vacation, met with Wyss. Shusterman was aware of Mrs. Stewart's withdrawal from the union. Shusterman did not question the union's majority status or the appropriateness of the unit. He told Wyss that he lacked the authority to make a decision, but would have to consult the home office.

On April 27 and 28, Shusterman visited the Pinckney Street store and questioned Henderson, the porter-presser, about his union membership and about the duration of his future employment at the store. Henderson informed him that he intended to work until June 1.

Shusterman returned to the Pinckney Street store on April 29. He told Henderson that the store's sales did not justify the employment of a presser. He assigned Henderson to work as a porter, outside the alteration shop, and reduced his hours from thirty to twelve per week.

Respondent formally rejected the union's request on April 30 on the ground that the requested bargaining unit was inappropriate.

On May 7, Mrs. Fentress was discharged (or compelled to take a medical leave of absence) after she refused to do the pressing at the Pinckney Street store. She had undergone surgery in late 1963 and had been instructed by her doctor not to do heavy work. She had not been required to do heavy pressing from the time she returned to work in February, 1964, until May 7, 1965, the day of her discharge.

Unfair practice charges were filed charging respondent with violations of § 8(a) (1), (3), and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (1), (3), and (5).

The Board found that respondent violated § 8(a) (1) and (3) of the Act by coercively interrogating its employees and § 8(a) (1) and (3) of the Act by laying off Mrs. Fentress and reducing Henderson's duties and hours because of their union membership. 157 NLRB 1666 (1966). It ordered respondent to

cease and desist from such practices, to reinstate Mrs. Fentress, and to make her and Henderson whole with back pay. Respondent does *not* contest the enforcement of these portions of the Board's order.

The Board further found that respondent violated § 8(a) (5) and (1) of the Act by refusing to recognize the union as the bargaining representative of its alteration room employees. It found that a unit of the alteration room employees in respondent's two Madison stores is an appropriate unit, that the complement of that unit was Mrs. Fentress and Mrs. Stewart, that Henderson was a temporary employee and therefore not a member of the unit, citing Receipe Foods, Inc., 145 NLRB 924 (1964), and that the refusal to recognize the union occurred on April 15, when both members of the unit were union members. The Board ordered respondent to cease and desist from refusing to bargain and ordered it to bargain with the union upon request and to post appropriate notices. Respondent challenges the finding it violated § 8(a) (5) and the Board's order that it bargain with the union.

In essence, respondent argues its refusal to recognize the union came on April 30, when it formally rejected the union's request by letter. By that time, the union's majority had dissipated.

It also contends the union's request was ambiguous with respect to whether a single two-store unit or two one-store units were claimed, and with respect to whether the unit included temporary employees. It maintains its experience indicated that its employees would reject a union in a secret ballot, although they had earlier signed authorization cards. The ambiguity of the request and the experience of the company gave rise, respondent claims, to a good faith doubt.

The sole question before us on this petition to enforce the order of the Board is whether the record as a whole contains substantial evidence to support the Board's decision. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ An employer violates § 8(a) (5) when it refuses to recognize and bargain with a union representing a majority of its employees in an appropriate bargaining unit, without a good faith doubt as to the union's majority status. Borden Cabinet Corp. v. N.L.R.B., 7 Cir., 375 F.2d 891 (1967); N.L.R.B. v. Frantz and Co., Inc., 7 Cir., 361 F.2d 180 (1966); N.L.R.B. v. Storack Corp., 7 Cir., 357 F.2d 893 (1966).

■ Since a good faith doubt about the appropriateness of a unit may cast doubt on the majority status of a union seeking recognition, it too may constitute a defense to a § 8(a) (5) charge. The Board and the courts have considered a number of factors in determining whether asserted doubt about the appropriateness of a unit is a defense to a § 8(a) (5) charge.[1]

1. These factors include: the employer's commission of § 8(a) (1) and (3) violations designed to destroy the union's majority subsequent to the refusal of recognition, Sabine Vending Co., Inc., 147 NLRB 1010 (1964), enforced, 5 Cir., 355 F.2d 932 (1966); Edward Fields, Inc., 141 NLRB 1182 (1963), modified, 2 Cir., 325 F.2d 754 (1963); cf. Clermont's, Inc., 154 NLRB 1397 (1965); the reasonableness of the asserted doubt in the context of Board and court decisions in cases involving comparable units, Leed's Shoe Store, 149 NLRB 500 (1964); the substantiality of the deviation between the requested unit and the unit believed appropriate by the employer and/or the Board, Sabine Vending Co., Inc., supra; Edward Fields, Inc., supra; the effect on the union's majority status of adopting the unit believed appropriate by the employer, Sakrete of Northern California, Inc. v. N.L.R.B., 9 Cir., 332 F.2d 902, 908 (1964), cert. den., 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965), reh. den. 380 U.S. 926, 85 S.Ct. 883, 13 L.Ed.2d 814 (1965); Sabine Vending Co., Inc., supra; the clarity of the unit definition in the union's demand, National Can Corp. v. N.L.R.B., 7 Cir., 374 F.2d 796 (1967); Orkin Exterminating Co. of Kansas, Inc., 136 NLRB 630 (1962); and the time when the employer first questioned the unit's appropriateness, Sakrete of Northern California, Inc. v. N.L.R.B., supra; Sabine Vending Co., Inc., supra; Ash Market and Gasoline, 130 NLRB 641 (1961).

In its brief and on oral argument respondent asserts four bases of good faith doubt which it says justify its refusal to bargain with the union.

■ First, it contends the union's request for recognition was ambiguous because telegrams were sent to the managers of each of the stores involved. This contention is without merit. The telegrams which gave respondent its first notice that the union requested recognition were identical and unambiguously requested a single unit consisting of the alteration room employees in respondent's two Madison stores.

■ Second, respondent contends it doubted the appropriateness of a multi-store unit of alteration room employees. At the time of the union's demand, similar units had been found appropriate in Loveman, Joseph and Loeb, 147 NLRB 1129 (1964); Foreman & Clark, Inc., 105 NLRB 333 (1953), enforced 9 Cir., 215 F.2d 396 (1954), cert. den., 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954); and Foreman & Clark, Inc., 97 NLRB 1080 (1952). At the time it demanded recognition at Madison, the respondent represented a unit of six alteration room employees at respondent's *three Milwaukee stores,* also in District Manager Shusterman's district. Under these circumstances, the Board could fairly reject as unreasonable respondent's asserted doubts about the appropriateness of a multi-store unit.

■ Third, respondent maintains that in view of the history of rejection of unions by Richman Brothers' employees throughout the nation, and particularly in view of this union's failure to organize Richman Brothers' employees, there was good reason to believe the Madison alteration room employees would reject the union in an election. It is clear, however, that an employer has no right to insist upon an election unless he has a good faith doubt of the union's majority. Snow v. N.L.R.B., 9 Cir., 308 F.2d 687 (1962).

The most substantial ground urged by respondent as a basis for good faith doubt is the status of Mr. Henderson, the presser at respondent's Pinckney Street store. The Board, overruling the trial examiner, found that Henderson was a temporary employee and excluded him from the unit. That finding is not in issue in this appeal. The sole issue presented to the court is the propriety of the Board's finding that the company violated section 8(a) (5) of the Act by refusing to recognize and bargain with the union as the validly designated representative of the tailor shop employees in the company's Madison stores.

We note at the outset that the purported doubt related to Henderson's inclusion in the complement of the bargaining unit, not to the appropriateness of the unit. The union's telegraphic demand defined the unit as "all tailor shop (alteration room) employees" in the two Madison stores. The Board has found appropriate a unit of alteration room employees at those stores, and we have found that respondent could not reasonably have doubted the appropriateness of such a unit. However, the union apparently claimed in conversations with respondent's managers that Henderson was a member of the unit.

■ Where the deviation between the unit requested by the union and the unit believed appropriate by the employer is insubstantial and does not affect the union's majority, it cannot justify the employer in refusing to bargain. See Sakrete of Northern California, Inc. v. N.L.R.B., 9 Cir., 332 F.2d 902, 908 (1964); Sabine Vending Co., Inc., 147 NLRB 1010 (1964), enforced, 5 Cir., 355 F.2d 932 (1966); Edward Fields, Inc., 141 NLRB 1182 (1963), modified, 2 Cir., 325 F.2d 754 (1963). The proper course for the employer in those circumstances is to refuse to bargain with respect to those employees whose unit status is disputed, not to wholly refuse to bargain. Sakrete of Northern California, Inc. v. N.L.R.B., supra. It is hardly consistent with the good faith enjoined by the Act for the employer to inflexibly deny recognition when the

differences between it and the union are slight.

The deviation between the three-man unit demanded by the union and the two-man unit that respondent now contends it believed appropriate is obviously insubstantial. Between the time of the union's demand on April 15, and the time of Mrs. Stewart's withdrawal from the union on April 27, the union had the unanimous support of the employees in both units. Respondent could have recognized the union as the bargaining representative of a unit consisting of its alteration room employees in the Madison stores and refused to bargain with respect to Henderson. Had it done so, Henderson's status could have been litigated in an unfair practice proceeding and resolved by the Board, without denying to Mrs. Fentress and Mrs. Stewart the right to collective bargaining guaranteed by the Act.

A single question remains: whether respondent's fifteen day delay in answering the union's demand for recognition, during which time the union's majority in the appropriate unit was dissipated, constituted a refusal to bargain.

Just as industrial stability requires that the collective bargaining relationship, once established by Board certification, be continued for a reasonable time, Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954); Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); N.L.R.B. v. John S. Swift Co., Inc., 7 Cir., 302 F.2d 342 (1962), it also requires that collective bargaining begin once a proper foundation is laid by the union. When all genuine doubt of the union's majority status in an appropriate unit has been erased, the employer's duty to bargain collectively becomes fixed. The employer may not evade that duty by marking time until the union's majority is lost through its own efforts, N.L.R.B. v. Mid-West Towel & Linen Service, Inc., 7 Cir., 339 F.2d 958 (1964); N.L.R.B. v. Philamon Laboratories, Inc., 2 Cir., 298 F.2d 176, cert. den., 370 U.S. 919, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1962); Joy Silk Mills v. N.L.R.B., 87 U.S.App. D.C. 360, 185 F.2d 732 (1950), cert. den., 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951), or through forces for which it is not accountable, Retail Clerks Union, etc. v. N.L.R.B., 9 Cir., 376 F.2d 186 (1967); Snow v. N.L.R.B., supra.

The point at which the duty to bargain becomes fixed cannot be determined by a simple counting of time. It must be determined in each case after an examination of the surrounding circumstances.

Respondent received the union's telegrams requesting recognition on April 15. The record shows that on April 15 or 16 respondent's store managers approached each of the three employees claimed by the union and questioned them about their union membership. Each employee affirmed his support of the union. No later than April 16, then, respondent was aware of the union's unanimous support among the alteration room employees at its Madison stores. It could have had no genuine, reasonable doubt of the union's majority status in an appropriate unit.

Respondent's duty to bargain became fixed when its two store managers ascertained the union's majority status on April 15 or 16. Events subsequent to that time, including Mrs. Stewart's withdrawal from the union on April 27, are irrelevant. Respondent cannot justify its refusal to extend recognition during the eleven or twelve days it knew of the union's majority. The Board's decision that respondent violated § 8(a) (5) and (1) of the Act by refusing to bargain after ascertaining the employees' union membership finds substantial support in the record.

Our treatment of the case does not require us to determine whether respondent's § 8(a) (1) and (3) violations were alone sufficient evidence of bad faith. See N.L.R.B. v. Mid-West Towel & Linen Service, Inc., supra; N.L.R.B. v. Philamon Laboratories, Inc., supra; Joy Silk Mills v. N.L.R.B., supra.

Since we find that substantial evidence on the record as a whole supports the Board's finding that respondent refused to bargain with the union in violation of § 8(a) (5) and (1) of the Act, the Board's order will be enforced.

Order enforced.