**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**CLARK–SPRAGUE, INC., Respondent.**

**No. 20532.**

United States Court of Appeals,
Eighth Circuit.

April 8, 1971.

Lay, Circuit Judge, dissented.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, John M. Flynn, Janet C. McCaa, Washington, D. C., for N. L. R. B.

Paul S. Kuelthau, St. Louis, Mo., Moller, Talent & Kuelthau, St. Louis, Mo., for respondent Clark-Sprague, Inc.

Before VAN OOSTERHOUT and LAY, Circuit Judges, and HARPER, Senior District Judge.

VAN OOSTERHOUT, Circuit Judge.

This case is before us upon the application of the National Labor Relations Board pursuant to § 10(e) of the National Labor Relations Act as amended (29 U.S.C.A. § 151 et seq.) for enforcement of its order against Clark-Sprague, Inc., (the Company) on March 10, 1970, and reported at 181 NLRB No. 91.

The Board found (1) the Company had violated § 8(a) (1) by coercively interrogating its employee Menke and offering him benefits if he would desert the Union,[1] and (2) the Company had recognized the Union as the collective bargaining agent of its letterpress men and compositors and in violation of § 8(a) (5) and (1) had withdrawn recognition before giving the bargaining relationship a reasonable time to function.

The Board's order required the Company to cease and desist from the unfair labor practices found and to bargain upon request with the Union and to post appropriate notices.

The Board is entitled to enforcement of its § 8(a) (1) order, described as (1) above, based on interrogation and coercion of employee Menke. Substantial evidence supports the finding of such violation. The validity of the finding is not here attacked.

The principal controversy in this appeal is the validity of the Board's bargaining order. The threshold question on this issue is whether the Company agreed to recognize the Union as the bargaining agent of its sole letterpressman Wisniewski and its two compositors, Menke and Kelsey. The Trial Examiner found the parties had not reached an understanding or meeting of minds on the recognition issue. The two member Board majority determined on the basis of inferences drawn from the evidence that the Company had accepted the Union as bargaining agent. Chairman McCulloch in his dissent agreed with the Examiner's finding that there had been no agreement to recognize the Union and hence no withdrawal of recognition occurred. We deny enforcement of the bargaining order.

The evidence is quite fully discussed in the Trial Examiner's reported decision

1. Local 252, Lithographers and Photoengravers International Union, AFL-CIO.

and we will not set it out in detail here. We will briefly state the basic facts.

The Company operated a printing plant in St. Louis. Most of its printing is by the lithographic process. The Union has represented the Company's six lithographers for over six years. The relations were friendly.

The Company also employed one letterpressman, two or three composing room employees and two shipping room employees. On May 5, 1969, letterpressman Wisniewski and compositor Menke signed Union authorization cards.

On May 13, President Fishman had lunch with Union President Creel and Vice President Mantei. At such luncheon, the two Union authorization cards were produced. This came as a surprise to Fishman. He advised the Union officials he thought the plan had some merit but that he saw a lot of problems involved and that he would have to talk to plant manager Bruno. All went to the plant and after a tour of the plant, Bruno was invited to the conference. Various problems were discussed, such as the Union's inability to furnish replacements, that other unions had jurisdiction over the craftsmen, and special problems with respect to a physically disabled employee and a part-time employee.

Fishman's testimony includes:

"The entire situation at that time is not what we see here now. It was a matter of them asking if they could represent these two men and they left it entirely up to us to decide if it would be all right with us if they represented them. So, the question was if we decided it was convenient for us to permit the Lithographers to represent them. We left them on the best of terms and with the idea we would let them know if we decided pro or con. That was the way we understood it.

There was no question about a majority or minority. It was just a matter of these two men being represented."

As pointed out by the Trial Examiner, Mantei was the only one of the four participants in the conference who testified positively that Fishman accepted the recognition demand. Union President Creel on rebuttal did not corroborate Mantei's testimony that Fishman responded to the bargaining demand by saying "O. K." The Examiner on the basis of the credited testimony of the other participants found no recognition agreement had been arrived at.

■ As pointed out in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, the evidence supporting the Board's conclusion may be less substantial when the Trial Examiner who heard the case has reached a different conclusion.

Under the *Universal Camera* standard, we find the Board's decision is not supported by substantial evidence on the record as a whole.

■ The General Counsel here had the burden of proving in the posture of this case that the Company agreed to recognize the Union majority status. This he has failed to do. A company has a reasonable time to determine whether it will grant recognition. In the interval, the Company learned that one of the card signers, Wisniewski, did not want the Union to represent him. Such decision the Examiner properly found was not induced by Company coercion. Neither party requested an election.[2]

Under our determination there was no recognition agreement. It follows that there was no withdrawal of recognition in violation of § 8(a) (5) and (1).

2. The General Counsel before the Examiner raised the alternate issue that even if recognition was not granted, the Company violated § 8(a) (5) by refusing the May 13 bargaining request and by engaging in unfair labor practice undermining the Union majority and precluding a fair election. Such contention was rejected by the Examiner on the ground that a bargaining order is not necessary to remedy the limited unfair labor practice found. The Board did not reach such issue and it is not raised in its petition for enforcement.

The Board's order is enforced as to the § 8(a) (1) violation. In all other respects, enforcement is denied.

LAY, Circuit Judge (dissenting).

I respectfully dissent.

I cannot approach the legal issue on the purely factual basis of who said what, to whom, and what did they mean. The examiner and the Board differ on the factual resolution of whether the company voluntarily recognized the union at the time the latter demanded recognition. The majority opinion places emphasis on the testimony of the company president as to whether the company would find it "convenient" to recognize the union. I fail to see the relevancy of this testimony. Under the previously existing collective bargaining contract between the parties, recognition of any majority status of the union did not further depend on the company's voluntary acquiescence. Section 3.4 of the collective bargaining agreement reads:

> "It is further agreed that, *upon proof* that a majority of an unaffiliated department has become affiliated with this Union, wages, hours of work and conditions of employment for that department *shall* be incorporated in this Contract." (My emphasis.)

The Company's consent to union recognition had been contractually given "upon proof that a majority of an unaffiliated department has become affiliated with this Union." Card authorization, unless contested in good faith as to authenticity constitutes such "proof." NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Once the union based its demand for recognition on a proper showing of its majority card status, and as long as that majority status of the union was not otherwise challenged,[1] recognition under the contract did not depend on the company's consent or convenience. Presumably, under *Gissel*, the company could have requested an election to verify the union's majority; but it did not do so. The only doubt it ever raised was to the appropriate size of the unit. This issue the Board resolved against the company. Under these circumstances, the company's failure to affirmatively manifest voluntary recognition to the union as viewed by the trial examiner is, in my judgment, irrelevant. On "proof" of majority status, without a valid challenge to such status and without a request for election, the collective bargaining agreement mandated the company's recognition of the union as bargaining agent. The employee's withdrawal after legitimate proof of majority status had been shown did not alter the company's duty to bargain.

The Board relies on the principle of NLRB v. Richman Bros. Co., 387 F.2d 809, 814 (7 Cir. 1967), which I find applicable here:

> "Just as industrial stability requires that the collective bargaining relationship, once established by Board certification, be continued for a reasonable time, Brooks v. N. L. R. B., 348 U.S. 96, 75 S. Ct. 176, 99 L.Ed. 125 (1954); Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); N. L. R. B. v. John S. Swift Co., Inc., 7 Cir., 302 F.2d 342 (1962), it also requires that collective bargaining begin *once a proper foundation is laid by the union.* When all genuine doubt of the union's majority status in an appropriate unit has been erased, *the employer's duty to bargain collectively becomes fixed.* The employer may not evade that duty by marking time until the union's majority is lost through its own efforts, N. L. R. B. v. Mid-West Towel & Linen Service,

---

1. No contention is made that at the time of the demand the union did not possess "proof that a majority of an unaffiliated department has become affiliated" with the union. The company's president raised only a doubt that the union may not have represented all of the men related to the department. However, it is well settled that when the dispute relates only to the size of the unit, the company must risk unfair practice charges if it is proven wrong. See NLRB v. Bardahl Oil Co., 399 F.2d 365 (8 Cir. 1968); NLRB v. Burroughs Corp., 261 F.2d 463 (2 Cir. 1958).

Inc., 7 Cir., 339 F.2d 958 (1964); N. L. R. B. v. Philamon Laboratories, Inc., 2 Cir., 298 F.2d 176, cert. den., 370 U.S. 919, 82 S.Ct. 1555, 8 L.Ed.2d 498 (1962); Joy Silk Mills v. N. L. R. B., 87 U.S.App. D.C. 360, 185 F.2d 732 (1950), cert. den., 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951), or through forces for which it is not accountable, Retail Clerks Union, etc. v. N. L. R. B., 9 Cir., 376 F.2d 186 (1967); Snow v. N. L. R. B. [308 F.2d 687 (9 Cir. 1962)]." (My emphasis).

I would grant enforcement of the Board's order in its entirety.