**HARDING GLASS INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1159.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1975.

Decided April 15, 1976.

Stanley E. Craven, Kansas City, Mo., for petitioner.

John D. Burgoyne, Atty., N. L. R. B., Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for respondent.

Before HEANEY, BRIGHT and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

Harding Glass Industries, Inc. (Company) petitions for review of an order of the National Labor Relations Board finding that the Company violated §§ 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Union.[1] The Board cross-applies for enforcement of its order. The crucial questions presented in the proceeding are whether the Board properly found (1) that the Company agreed that the Union majority could be proved by a card check conducted by a neutral third party and (2) that the results of the card check bound the Company to recognize the Union as the representative of the Company's employees.

The Board answered these questions in the affirmative and issued a bargaining order.[2] Upon review of the record, we hold that substantial evidence supports the Board's finding that the Company agreed to the card check, but that the results of the card check made known to the Company did not establish that the Union necessarily represented a majority of the employees in the bargaining unit it proposed.

## I.

The case presents a somewhat unusual but not seriously disputed fact situation. The Company operates wholesale and retail automobile glass shops at three locations (in Omaha, Nebraska, and the adjoining city of Council Bluffs, Iowa). The Company employs an installer-manager at each location. It also employs two glass installers at one location and one glass installer at the other two locations. In addition, one James Daly solicits glass replacement business from area insurance agents and also fills in as a glass installer at the shops. This three-store operation is managed by Bernard Young, who has offices in Omaha.

Thus, apart from manager Young, the Company employs eight persons in its glass shops, three installer-managers, one solic-

1. Glaziers and Glassworkers Local 573.

2. The Board decision is reported at 216 NLRB No. 52. Member Kennedy dissented from the majority of the three-man Board panel.

itor-installer, and four installers. The installer-managers and the solicitor-installer each spends approximately 25 percent of his time in glass installations.[3] Also, Herman Fuller works for the Company to estimate and bid on contract work. Fuller's work is unconnected with the automobile glass shops.

In January 1974, Ralph Scalzo, the business representative of the Union, obtained union cards from all four installers. On Thursday, January 31, 1974, he wrote Young at Harding Glass advising

This is to notify you that [the Union] now represents your employees.

All Auto Glass Installers, and Installer-Managers, but excluding office, clerical, professional, guards and supervisors, as defined in the Labor Management Act, as amended.

Scalzo claimed to possess authorization cards of a "majority of the employees in the appropriate bargaining unit." The letter concluded:

We, therefore, request that by return letter you recognize Local Union No. 573 as the exclusive bargaining representative of your employees, as above described, so that we may begin to negotiate a contract at the earliest possible time. We will be pleased to prove our majority status by presenting our authorization cards to an impartial neutral third party mutually agreed upon. In view of our desire to render immediate protection and assistance to the employees involved, we shall expect your reply by February 1, 1974.

Later that same day about 2:00 p. m., Scalzo called on Young and handed him this letter and a formal recognition agreement. Scalzo demanded that Young recognize the Union by the next day, Friday, February 1.

When Young protested that was moving too fast, Scalzo replied that that was "the way it operates." After Scalzo's departure, Young telephoned two of his installers to inquire whether they had joined the Union. Each employee answered falsely that he had not.[4]

Later that day, in a telephone conversation Young informed Scalzo that he wanted a card check by an impartial observer. In the conversation Young agreed to a card check for the next day by a priest suggested by Scalzo. Young stated that he would be out of town the next day, Friday, but that he would leave a list of employees with Herman Fuller, his contract manager. Young emphasized to Scalzo that Fuller was "just a body" and that he had no management authority over the glass shops.

Young claims that about an hour later, he called the Union's office and talked to Scalzo's superior who agreed to put off the card check until the next Monday.

In any event, Young did contact Herman Fuller and advised him of his arrangements with Scalzo. He gave Fuller authority to present the observer with a list of the employees. No specific names were mentioned but Young told Fuller that he assumed the list should include managers.

Scalzo that day contacted a priest, Rev. Daniel F. Saltys, to conduct the card check. The following day, Friday, February 1, Scalzo arranged to meet with Fuller and Rev. Saltys. At the meeting Fuller produced a list of employees. The list contained the names of three installer-managers and four installers, but omitted solicitor-installer Daly. Rev. Saltys verified that the Union possessed four cards validly signed by employees on the list. However, the identity of the four employees was not disclosed.

---

**3.** The administrative law judge's finding, adopted by the Board, was that Daly possibly spends five percent more time actually installing glass and that his status "in all other respects parallels that of the installer-managers."

**4.** These calls formed the basis for a Union charge that the Company engaged in unlawful intimidation of the employees in violation of

§ 8(a)(1). The administrative law judge and the Board rejected this claim for the evidence disclosed that Young placed a second call, five minutes later, to each employee assuring that each was free to join the Union, if he wished, without jeopardy to his job. The Company's refusal to bargain was found to violate § 8(a)(1), but only because it violated § 8(a)(5).

Daly testified that on his return to his office on Saturday, February 2, he learned of the results of the card check and discovered that Fuller had omitted the name of solicitor-installer Daly from the list of employees submitted to the Union and Rev. Saltys. Fuller said, "I forgot about him." Scalzo testified that Fuller had told him that Young had prepared the employee list. The administrative law judge found that Young's instructions to Fuller did not include the mention of any specific names for the list.

On the following Monday, February 4, Young conferred with his attorney. Following this conference, Young mailed the Union a letter advising that the Company would seek an election and stating further:

> There is a serious question whether your union represents a majority of those eligible to vote, particularly in view of our review of the unit which the board would find appropriate. In addition, we have questions concerning the circumstances under which the cards are signed and circumstances under which you sought to have the cards reviewed. As you were further advised, our contract manager was not authorized to recognize the union on behalf of Harding Glass as he was unfamiliar with the units involved and had nothing whatsoever to do with them.

On the following day the Company filed a representation petition with the NLRB seeking a Board supervised election. The petition's description of the bargaining unit was identical to that previously used by the Union except that it included the classification of "solicitor-installer" and indicated a total unit membership of eight. Three days later the Union filed a petition seeking an election in the unit of "All Auto Glass Installers and Installer Managers." Subsequently, the Union withdrew its petition and filed the charges which culminated in these unfair labor practice proceedings.[5]

At the hearing on the complaint, the general counsel announced that he would seek a bargaining order for an appropriate unit, regardless of the Union's unit designation in its complaint. The Union then disclosed that its four cards were signed by the four glass installers. The administrative law judge and the Board determined that the installer-managers and the solicitor-installer, Daly, were supervisors and should be excluded from the unit. Accordingly, the Board's order directed the Company to bargain with a unit consisting only of the four glass installers.

On these facts, the Board majority agreed with the conclusion of the administrative law judge that the Company could not have entertained a reasonable doubt that the Union represented a majority of the Company's employees and that the improper inclusion of installer-managers in the bargaining unit proposed to the Company by the Union did not impair the validity of the Union's bargaining demands since the Company did not raise the question until the hearing three months later. In dissenting, member Kennedy disagreed that the evidence disclosed that Young had given his unqualified approval to a card check or that he had agreed to be bound by the results. He also characterized the demand for recognition as fatally defective since the Union sought to bargain for an inappropriate unit which included several supervisors.

II.

Section 9(a) of the Act, in pertinent part, provides that "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all employees in such unit * * *." 29 U.S.C. § 159(a). Section 9(c) provides machinery for holding of elections and granting certificates attesting to the status of a union as representing a majority of the employees in an appropriate unit.

---

5. The Board's regional director dismissed the Company's petition upon determining that a complaint should issue in these present proceedings. The Board rejected the appeal of this ruling by the Company.

■ Although Section 9(a) refers to representatives "designated or selected" by a majority of the employees, that section does not delineate precisely the manner of choosing such representatives. The Supreme Court has recognized that Board-conducted elections are preferred. *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 596, 89 S.Ct. 1918, 1930, 23 L.Ed.2d 547, 568 (1969). *See Linden Lumber Division v. NLRB,* 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). In *Gissel,* the Court specifically reserved judgment on the propriety of relying upon authorization cards as a substitute for an election in the absence of contemporaneous unfair labor practices. 395 U.S. at 601, n.18, 89 S.Ct. at 1933, 23 L.Ed.2d at 570.

The Board's brief refers to two instances in which an election is unnecessary since the employer cannot be said to have a good faith doubt of the Union's majority—(a) where the employer's personal poll proves the union's majority, *Sullivan Electric Company,* 199 NLRB 809 (1972), *enforced* 479 F.2d 1270 (6th Cir. 1973), and (b) where the employer consents to an alternative method of proving majority support for the union through a means other than by an election, such as a card check by an independent third party. *Snow and Sons,* 134 NLRB 709, *enforced* 308 F.2d 687 (9th Cir. 1962).

The Board applied *Snow* in this case. It found "that Respondent sought the card check [and] * * * the impartial observer verified that the Union had authorizations from the majority of Respondent's employees * * *."

■ The Board has recently clarified and updated the *Snow* doctrine. It emphasized that the doctrine only applies where two factors exist. The Board said:

[T]he decision in [*Snow*] rested not only on the fact of employer *knowledge,* but also upon the fact that the employer breached his agreement to permit majority status to be determined by means other than a Board election. [*Linden Lumber Division, Summer & Co.,* 190 NLRB 718, 720; *Wilder Mfg. Co.,* 198 NLRB No.

123; *decisions affirmed, reversing court of appeals,* 419 U.S. 301 [, 95 S.Ct. 429, 42 L.Ed.2d 465] (1974).]

Thus, the two essential elements are agreement to a card check or other procedure and resultant knowledge that the Union in fact represents a majority.

■ The record discloses adequate support for the Board's finding that Young agreed to the card check and authorized Fuller to represent him at the meeting with the impartial third party. Whether the Union took improper advantage of Mr. Young by proceeding with the card check in his absence and whether Fuller was authorized to stand in for Mr. Young presented factual issues for the Board's resolution. We do not overturn these findings.

■ It is true that the record suggests that Young was not aware that a card count favorable to the Union could serve as a basis for the Union to avoid an election. However, as the Ninth Circuit observed in rejecting a similar argument in *Snow,*

[i]t [is not] important whether an employer appreciates in advance that a card count may provide information which will undermine his right to insist on a Board election. [*Snow v. NLRB, supra,* 308 F.2d at 692.]

We agree with this analysis. The verification procedure approved by the employer gives that employer accurate information, but the employer need not appreciate in advance the obligations that may arise from knowledge so gained.

■ Conceding, however, that here, as in *Snow,* the Company agreed to a card count, the question remains whether the results of the card count gave the Company knowledge that the Union represented a majority of the employees. In this case, the crucial time for assessing the Company's knowledge is Monday, February 4, 1974, the date on which the Company was found to have unfairly rejected the Union's bargaining demand.[6]

---

6. The courts and the Board look to the time of the refusal to bargain in assessing the fairness

of an employer's actions. *See Colecraft Mfg. Co. v. NLRB,* 385 F.2d 998, 1006–08 (2d Cir.

The administrative law judge and the Board assumed that verification of the four cards demonstrated the Union's majority status. However, this assumes that Daly was clearly not within the unit described by the Union. If he was, then the Union showed support from only four of eight employees (including installer-managers), not a majority.

The unit demanded by the Union was described as "your employees," specifically "All Glass Installers and Installer-Managers" but not supervisors. The position of solicitor-installer was not mentioned. However, the Union's designation clearly included installer-managers as outside the supervisory class. The Board found that Daly, the solicitor-installer, installed glass as frequently as did the installer-managers, and that his status precisely paralleled theirs in all other respects. It would seem anomalous to include all other employees, including three in positions virtually identical to Daly's, but to exclude him.

■ Thus, a reasonable reading of the Union's unit description must include Daly. The fact that Fuller's first list omitted Daly cannot be considered particularly significant. That list was prepared in haste in order to comply with the Union's demand for immediate action.[7] The record discloses that as soon as Young returned and saw the list he asked why Daly had been omitted. Fuller responded that "he forgot about him."

On Monday, February 4, the first business day after Young's return, he wrote a letter to the Union questioning its majority in an appropriate unit. He also noted that Fuller was "unfamiliar with the units involved and had nothing whatsoever to do with them." Any ambiguity in this letter was clarified the next day when the Company filed with the Board an election petition which indicated its belief that Daly should be classified in a unit category with the installers and installer-managers.

Even if Young should be charged with constructive knowledge that the employee unit would not include supervisory personnel, he did not know on February 4th, nor for three months thereafter according to this record, that the Union represented a majority of the appropriate unit of four installers for he did not know whether the four who had signed cards were managers or installers. Since he had been told that two installers had not signed, he could reasonably, though erroneously, assume that some managers had signed union cards.

■ Finally, the Company ought not to be blamed for any misinformation concerning the source of Union support. The Union obtained cards from only the four installers but claimed to represent other employees whose management relationship was indicated by the very designation "Installer-Managers," employed by the Union. The Union had an adequate opportunity to refine its unit designation prior to filing its grievance and declined to do so. Although neither an employer nor union need be bound by the inclusion of persons in a unit who are later proved to be ineligible, *see Florida Power & Light Co. v. Electrical Workers, Local 641,* 417 U.S. 790, 813 n.13, 94 S.Ct. 2737, 2743, 41 L.Ed.2d 477, 486 (1974); *accord Sakrete of N. Calif., Inc. v. NLRB,* 332 F.2d 902 (9th Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965); *Hargis & Sons, Inc.,* 164 NLRB 1042 (1967), the unit designated in the union's demand for recognition affords a frame of reference for assessment of the propriety or impropriety of the employer's refusal to bargain under the circumstances here disclosed. *See* cases cited note 6 *supra.*

In summary, the employer, on February 4, knew only that an undesignated four of

---

1967); *National Can Corp. v. NLRB,* 374 F.2d 796, 800–04 (7th Cir. 1967); *Carlton Paper Corp.,* 173 NLRB 153, 155 n.10 (1968); *Sportswear Industries, Inc.,* 147 NLRB 758 (1964).

**7.** While a union has an understandable interest in obtaining a prompt response from an employer, this court has been clear that "[a] company has a reasonable time to determine whether it will grant recognition." *NLRB v. Clark-Sprague, Inc.,* 440 F.2d 1099 (8th Cir. 1971).

the eight employees of his glass shops supported the Union. This count did not represent a majority of all employees engaged in glass installation, nor to his knowledge, a majority of the nonsupervisory personnel.

To trigger the Board's *Snow* doctrine, the record must show "the fact of employer knowledge" that the union represents a majority of the affected employees. Here, the record conclusively shows the contrary as the Company knew that the Union represented neither a majority of all employees of the glass shops nor a majority of the glass shop installers.

The Board erred in its analysis of the record by focusing upon facts only later proved to be true—that four installers, or 100 percent of the employees in the appropriate unit, signed authorization cards—and by assuming that the employee unit designated by the Union included only the seven persons initially listed for verification purposes by Fuller. As we have noted, the refined *Snow* doctrine presents the issue of the employer's knowledge contemporaneous with the refusal to bargain. Unless the employer knows of the union majority, a refusal to bargain simply cannot be considered unfair.

Since the Union did not establish its majority status to the knowledge of the employer by means other than an election and the employer engaged in no unfair labor practice that would impair the elective process, the Union's remedy to enforce its actual bargaining authority was to seek an election. *See Linden Lumber Division, supra,* 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465.[8]

Accordingly, we deny enforcement of the order, vacate the bargaining order, and direct dismissal of the Union's complaint.

---

8. We think it well again to direct attention to the observation made by the court in *Linden* that election procedures offer a means of speedily resolving the representation dispute, while resolution of this issue through unfair practice proceedings usually is attendant with long delay. *Id.* at 306–07, 95 S.Ct. at 432–433, 42 L.Ed.2d at 469–470.