**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JOHN S. SWIFT COMPANY, Inc., Respondent.**

**No. 13549.**

United States Court of Appeals Seventh Circuit.

April 23, 1962.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer, Atty., N. L. R. B., Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Lee M. Modjeska, Attys., N. L. R. B., for petitioner.

John H. Doesburg, Jr., Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended, (29 U.S.C.A. § 160(e)) for enforcement of its order issued against John S. Swift Company, Inc., respondent. The Board's decision and order are reported at 133 NLRB No. 15.

The Board found that the Company violated Section 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (1, 5) by refusing to bargain with the Union [1] and by refusing to supply the Union with current information as to names, classification and wage rates of employees in the appropriate unit, and as to the Company's health and welfare plan. The Board's order requires the Company to cease and desist from such refusals and in any like or related manner interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of the Act, 29 U.S.C.A. § 157. Affirmatively, the order requires the Company to furnish the Union with current information on the above designated subjects; to bargain collectively with the Union, and, if understanding be reached, to embody such understanding in a signed agreement; and to post the appropriate notice.

The contested issue before us is whether the Board properly found that the Company violated Section 8(a) (5) and (1) of the Act by refusing to furnish the Union with current bargaining data and by refusing to bargain with the Union.

The facts are stipulated. The Union was certified on June 1, 1956 as bargaining agent for all lithographic production employees at the Company's Chicago plant. Beginning in July of that year the Union and the Company engaged in various bargaining sessions, but no contract was negotiated.[2] On March 15, 1957, the Union filed charges,

---

1. Local No. 4, Amalgamated Lithographers of America, AFL–CIO.

.2. Although wage rates had been agreed upon, issues concerning the ratio of apprentices to journeymen and participation in the Union's health and welfare fund remained unresolved.

and on July 16, 1958 a complaint issued charging the Company with certain unfair labor practices during 1956 and 1957. Proceedings before the Board culminated in an order against the Company which the Board petitioned this Court to enforce. On May 2, 1960, in N. L. R. B. v. John S. Swift Company, Inc., 7 Cir., 277 F.2d 641, we sustained the Board's finding and conclusion that the Company had violated Section 8(a) (5) and (1) of the Act by its refusal to furnish requested wage and classification data and health and welfare plan data. We denied enforcement of the Board's order in so far as it related to the discharge of one employee and the interrogation of another, but in all other respects we ordered that the Board's order in this prior proceeding be enforced. In our opinion we specifically stated (p. 645):

> "We are of the opinion the Board's conclusion that the respondent Company violated Section 8(a) (5) and (1) by refusing to furnish requested wage and classification data and breakdown as to the cost of its existing health and welfare plan is amply supported by the record."

Our enforcement decree, entered May 26, 1960, recites that its decretal orders are made "in conformity" with the Court's opinion of May 2, 1960, describes the appropriate unit, and orders [3] the respondent Company to cease and desist from refusing and failing to furnish the Union with "(1) information regarding names, job classifications, wage rates and apprentice or journeyman status of employees in the appropriate unit; and (2) information regarding the Respondent's existing health and welfare program, including the cost to the Respondent of existing health and welfare benefits paid to employees in the appropriate unit"

and, upon request of the Union to furnish it with such data.

On June 22, 1960 the Union requested to meet with the Company for the purpose of collective bargaining and requested the Company to furnish it with the wage rate, classification, and health and welfare plan data. The Company supplied health and welfare plan data as of March 11, 1957, the date on which the first request for such data had been made. Wage rate and classification data was furnished as of June 4, 1957. When requested to furnish current data and again requested to meet with the Union for collective bargaining the Company refused, stating that the Union's status as representative of a majority of the employees terminated one year from the date of its certification and that the Company "does not believe you represent a majority of its employees in the lithographic department". Following these refusals proceedings before the Board were initiated and the Board order here sought to be enforced was entered.

The Company assails the Board's order on the ground that it is not obligated to bargain with the Union and not being so obligated is under no duty to furnish the data directed to be furnished. The Company's assertion that it is under no obligation to bargain with the Union is premised on contentions that although our enforcement decree in N. L. R. B. v. John S. Swift Company, Inc., 7 Cir., 277 F.2d 641, directed it to supply data there found pertinent to unresolved issues which were the subject of current negotiations, the decree did not by express language command further bargaining with the Union; that the Union, through no fault of the Company, has lost its majority status; and that if an obligation to bargain exists it is enforceable on-

3. The decree also ordered that the Company, on application, offer to reinstate five employees found by the Board to have been discharged for engaging in a protected activity; cease and desist from interfering with, restraining or coercing employees in the exercise of their right to engage in concerted activities for mutual aid or protection and the discharge of, or discrimination against employees in regard to hire or tenure of employment because of the exercise of such rights, except as may be permitted by the proviso to Section 8(a) (3) of the Act; post a designated notice; and notify the Regional Director, within 10 days, as to compliance.

ly by means of a petition for a contempt adjudication for non-compliance with the May 26, 1960 decree of this Court and not by the issuance of a new complaint before the Board.

We will consider the Company's contentions in inverse order.

██ Although an employer's conduct following an enforcement decree issued against it may be such that a contempt proceeding would be an appropriate procedure the Board is not required to resort to such proceeding but may issue a complaint covering claimed violations occurring subsequent to the decree. Thompson Products, Inc. v. N. L. R. B., 6 Cir., 133 F.2d 637. If the Company violated the Act subsequent to our decree of May 26, 1960 it was amenable to the Board's jurisdiction and authority even though the conduct forming the basis of the new complaint may have constituted a violation of the enforcement decree.

██ The Company asserts that the Union lost its majority status in March, 1957 when twenty of the employees of the original unit of approximately twenty-nine were lawfully discharged for cause March 11, 1957. Two employees had been discharged previously on January 3, 1957. Five employees who were discharged March 12, 1957 but ordered reinstated on application did not apply for reinstatement. But the record is devoid of evidence establishing that the Union in fact lost its majority status. The discharges and replacements show only a turnover of employees in the unit. Of itself such turnover is no evidence of loss of majority status by the Union. N. L. R. B. v. Worcester Woolen Mills Corporation, 1 Cir., 170 F.2d 13, 17; Superior Engraving Co. v. N. L. R. B., 7 Cir., 183 F.2d 783, 793. And, the Company's reliance upon Stoner Rubber Company, Inc., 123 NLRB 1440 as a pronouncement that in order to maintain bargaining rights, after expiration of the certification year, a union must affirmatively show that it represents a majority of employees in the unit, if such representation is challenged by the employer at any time after one year following the date of certification, is unfounded. In Stoner it was held (p. 1445):

"After the lapse of the certification year, the certification creates only a presumption of continued majority. This presumption is rebuttable. Proof of majority is peculiarly within the special competence of the union. It may be proved by signed authorization cards, dues checkoff cards, membership lists, or any other evidentiary means. An employer can hardly prove that a union no longer represents a majority since he does not have access to the union's membership lists and direct interrogation of employees would probably be unlawful as well as of dubious validity. Accordingly, to overcome the presumption of majority the employer need only to produce sufficient evidence to cast serious doubt on the union's majority status. The presumption then loses its force and the General Counsel must come forward with *evidence* that on the refusal-to-bargain date the union in fact did represent a majority of employees in the appropriate unit."

Unlike the instant case where only a turnover of employees is shown to have existed, the Board, in Stoner was speaking in the context of a situation where the employer had a reasonable basis for good faith belief that the union no longer represented a majority on the crucial date. The evidence showed that a strike had been in progress for approximately five months, during which time there had been no bargaining meetings, a lapse which was not shown to have been deliberately caused by the employer or due to any "stalling" tactics on its part. The union had not communicated with the employer for a period of three months. Fourteen months previously the union had won the election by a vote of thirty-two to twenty-seven. On the critical date the plant was operating with a complement of eighteen permanent replacements

for the strikers and eighteen former strikers who had crossed the picket lines to return to work, even though the strike was still in progress. In the face of this evidence it was not unreasonable to assume that the eighteen early returning strikers and eighteen replacements, all of whom were crossing the picket lines, were not adherents of the union. And, it was on the basis of this evidence that the Board held the presumption of continued majority lost its force and the burden of proof as to the union's majority shifted to the General Counsel.

But in the instant case there is no evidence of probative value to rebut the presumption of continued majority and to shift the burden of proof. The Company's assertion of the Union's loss of majority status is without support in the record and the doctrine of Stoner is of no avail to the Company. And, as pointed out in Brooks v. N. L. R. B., 348 U.S. 96, 104, 75 S.Ct. 176, 181, 99 L.Ed. 125:

> "Furthermore, the Board has ruled that one year after certification the employer can ask for an election or, if he has *fair doubts* about the union's continuing majority, he may refuse to bargain further with it. This, too, is a matter appropriately determined by the Board's administrative authority." (emphasis supplied).

To be "fair" doubt must have a rational basis in fact. Here there is no evidence of probative value to justify such "fair doubts".

The fact that the certification year had lapsed is of no consequence in so far as the Company's obligation to bargain with the Union is concerned. The certification year was interrupted by litigation of unfair labor practice charges. The Company is obligated to bargain with the Union for a reasonable period of time exclusive of the period during which the bargaining relationship was suspended by litigation of the Company's unfair labor practices. Superior Engraving Co. v. N. L. R. B., 7 Cir., 183 F.2d 783, 792. A bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed. Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 705, 64 S.Ct. 817, 88 L.Ed. 1020.

We find no merit in the Company's contention that it is not obligated to bargain further with the Union because our enforcement decree of May 26, 1960 omitted an express command that it do so. Our decree expressly ordered the Company to furnish the Union with the wage and classification and the health and welfare plan data, information found by the opinion filed (277 F.2d 641, 645) to be "pertinent to unresolved issues concerning the ratio of apprentices to journeymen and participation in the Union's health and welfare fund" matters "the subject of current negotiations". Implicit in our decree is the requirement that the Company bargain with the Union. The order compelling the furnishing of the data could have served no other purpose than to make available to the Union data and information to enable intelligent bargaining on the unresolved issues. Moreover, the Company's duty and obligation to bargain arises from the Act—our decree is but a means of enforcement—it "is aimed at the prevention of unfair labor practices, an objective of the Act" (N. L. R. B. v. Warren Company, Inc., 350 U.S. 107, 112, 76 S.Ct. 185, 100 L.Ed. 96. While the duty and obligation of the Company to furnish the data requested was an issue in the proceeding before us—and was disposed of by our opinion and decree—the duty of the Company to bargain with the Union was not in issue in that proceeding. The issue on this phase of the matter was whether its refusal to furnish the data constituted a refusal to bargain in good faith in violation of Section 8(a)(5) of the Act. We held that the Board did not err in finding the refusal to furnish the data a violation of Section 8(a)(5) and in limiting our decree to enforcement of the Board's order against the Company to furnish the data we did not

negate the Company's obligation to further bargain with the Union for a reasonable time. Duties enjoined by law, and the existence of which are not an issue in the proceeding before us, are not negated by an enforcement decree which omits to recite them—much less by a decree which implicitly recognizes them.

■ The Company is obligated to bargain with the Union and under obligation to furnish current information and data as to the names, classification, and wage rates of employees in the appropriate unit, and as to the Company's health and welfare plan. The Board properly found that the Company violated Section 8(a)(5) and (1) of the Act by refusing to bargain with the Union and by refusing to furnish the Union with current bargaining data.

It is ordered that the Boards' order be enforced in its entirety.

Enforcement ordered.