**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RISH EQUIPMENT COMPANY, Respondent.**

No. 12445.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1969.

Decided March 7, 1969.

Leon M. Kestenbaum, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Paul J. Spielberg, Atty., N.L.R. B., on brief) for petitioner.

George V. Gardner, Washington, D. C. (Asa Ambrister on brief) for respondent.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

PER CURIAM:

The National Labor Relations Board seeks enforcement of its order [1] issued against Rish Equipment Company (hereafter "Company"). The matters herein involve only the company plant at Bluefield, West Virginia. In its brief and in oral argument the Company admits that substantial evidence supports the Board's finding that the Company violated section 8(a) (1) of the National Labor Relations Act, as amended,[2] by engaging in and creating the impression that it was engaged in surveillance of a union meeting attended by company employees. The sole question remaining is whether there is substantial evidence on the whole record to support the Board's finding that the Company violated section 8(a) (5) and (1) of the Act by refusing to bargain with the Union.

At a representation election conducted by the Board on August 30, 1963, a majority of the employees apparently voted for the Union. Subsequently, one challenged ballot was ordered counted which increased the union majority and on February 10, 1965, the Union was certified as the representative of the Company's unit employees. The Union requested bargaining by letter to the Company of February 28, 1965, which request was completely ignored. However, prior thereto there. had been litigation

---

1. The Board's Decision and Order are reported at 169 NLRB No. 129.

2. 29 U.S.C. § 151 *et seq.*

before the Board on the Union's charges of unfair labor practices which had resulted in a Board Decision and Order on January 22, 1965, remanding the case for action by the Regional Director on disputed ballots, and finding that the Company had violated section 8(a) (3) and (1) of the Act. Upon review by this court enforcement of the Board's order was granted.[3] Thereafter in June 1966 the Company advised the Regional Director that it had complied with this court's decree and the Board's order.

In the instant case the Trial Examiner, in his decision, which was approved and adopted by the Board, stated:

"The February 1965, certification was issued only after the Board Decision and Order in the prior unfair labor practice case, in which it also resolved issues in the representation case relating to challenged ballots and the status of certain voters. Aside from its formal demand for recognition on February 23, 1965, the Union did nothing further to seek bargaining while the Board took that case to the United States Court of Appeals for the Fourth Circuit to enforce its order. While this enforcement proceeding was pending, the unfair labor practices in the prior case remained unremedied, which is probably why the Union took no steps to act as bargaining agent under the certification until after the court enforced the Board Order in April 1966, and Respondent had finally complied with that Order, in part by posting the required notice thereafter. In these circumstances it would appear that the 1-year presumption of majority status inherent in the certification must be considered as continuing during the period of litigation of the contemporaneous unfair labor practices, and for a reasonable period of time after they have been remedied, in order to give the bargaining relationship created by the certification a reasonable chance to operate and succeed without outside interference or improper pressure. Ray Brooks v. N.L.R.B., 348 U.S. 96 [75 S.Ct. 176, 99 L.Ed. 125]; Frank Bros. [Franks Bros. Co.] v. N.L.R.B., 321 U.S. [702] 705, 706 [64 S.Ct. 817, 88 L.Ed. 1020]; Mar-Jac Poultry Company, Inc., 136 N.L.R.B. 785 (extension of certification period for 1 year after actual settlement of unfair labor practices which interrupted bargaining pursuant to the certification); Capital Aviation, Inc., 152 NLRB 745, 756 (similar extention of statutory bargaining period on similar facts); General Electric Company, Battery Products, Capacitor Department, 163 NLRB No. 30; San Clemente Publishing Corporation, et als., 167 NLRB No. 2. On these precedents the Union's status under the certification should be permitted to continue without challenge for at least a year after Respondent notified the Regional Director of its compliance with the Board Order in the prior case."

■■■ It appears to be well established that an employer must bargain with the certified representative of his employees for a period of one year from the date of the Board's certification even if the Union loses its majority status through no fault of the employer.[4] After that time, while the certification loses its absolute force, it creates a rebuttable presumption that the Union continues to enjoy majority support.[5] Accordingly, where a certification is a

3. N.L.R.B. v. Rish Equipment Co., 359 F.2d 391 (4 Cir. April 10, 1966).

4. NLRB v. United States Sonics Corp., 312 F.2d 610, 616 (1 Cir. 1963). *Accord:* Brooks v. N.L.R.B., 348 U.S. 96, 103–104, 75 S.Ct. 176, 99 L.Ed. 125 (1954); N.L.R.B. v. Holly-General Co., 305 F.2d 670, 675 (9 Cir. 1962).

5. Brooks v. NLRB, 348 U.S. 96, 104, 75 S.Ct. 176, 99 L.Ed. 125 (dictum); N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 589 (5 Cir. 1966); N.L.R.B. v. Richard W. Kaase Baking Co., 346 F.2d 24, 31 (6 Cir. 1965); N.L.R.B. v. John S. Swift Co., Inc., 302 F.2d 342, 345–346 (7 Cir. 1962). *See also* N.L.R.B. v. Local 3, IBEW, 362 F.2d 232, 235 (2 Cir. 1966), and cases cited.

year or more old, an employer may refuse to bargain without violating the Act "if, but only if, he in good faith has a reasonable doubt of the Union's continuing majority." [6]

■■ In the case of a certified union the presumption that its majority status continues places the burden on the employer to prove that it had a good faith doubt of the union's continuing majority.[7] To meet this burden "requires more than an employer's mere mention of [its good faith doubt] and more than proof of the employer's subjective frame of mind." [8] What is required is a "rational basis in fact." [9]

■■ In the case here under review the Company first failed to respond to the Union's request for bargaining in February 1965, immediately after the certification. The Union filed no unfair labor practice charge for refusal to bargain at that time, apparently because it decided to defer bargaining until the Company's preelection misconduct had been remedied. Following this court's decision in the related unfair labor practice case and the Company's subsequent compliance with the Board's 8(a) (1) and 8(a) (3) order the Union again requested bargaining in February 1967, but received no response. The Union then collected authorization cards from eighteen of thirty employees in the unit in order to demonstrate its continued majority support. In April 1967, the Union made a final request for recognition and bargaining, offering its cards to prove that its majority remained intact. Again the Union's requests were completely ignored.

At the hearing the Company's sole evidence relative to its alleged good faith doubt is the testimony of Supervisor Stanton, in charge of the Company's labor relations, that he heard a rumor that an antiunion petition was circulating in the shop. Stanton admitted that he never saw the petition, did not know who was circulating it and, indeed, had no reason to think that any employees had signed it. The petition was not introduced at the hearing and there was no other evidence proffered which might raise a question about the Union's majority or to support the Company's alleged good faith doubt. We conclude that Stanton's totally unsupported testimony concerning the antiunion petition "does not arise to the dignity of substantial evidence to justify a doubt of the [Union's] continuing majority status." N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 592 (5 Cir. 1966). See also cases cited in footnote 9.

In this context it is relevant to the Company claim of "good faith doubt" that it has consistently opposed the organization of its employees, repeatedly by unlawful means. The Company has committed a number of unfair labor practices and after this court in 1966 ordered the Company to cease and desist from its unlawful activities the Company admittedly again engaged in surveillance within a few months of this court's decree. Furthermore, every demand for bargaining since the Union's certification in February 1965, i. e., letters and calls to the Company, or its attorney who had full authority with respect to dealing or not dealing with the Union, has been ultimately ignored. On occasion, the Company attorney promised to advise the Union of the Company's position but failed thereafter to respond. In conjunction with the shallow and un-

---

6. Laystrom Manufacturing Co., 151 NLRB 1482, 1483–1484 (1965), enforcement denied on other grounds, 359 F.2d 799 (7 Cir. 1966), and cases cited in footnotes 4 and 5.

7. N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 592 (5 Cir. 1966). *Accord:* N.L.R.B. v. John S. Swift Co., 302 F.2d 342, 345 (7 Cir. 1962).

8. Laystrom Manufacturing Co., 151 NLRB 1482, 1484.

9. N.L.R.B. v. John S. Swift Co., 302 F. 2d 342, 346 (7 Cir. 1962). *Accord:* N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 589 (5 Cir. 1966) ; N.L.R.B. v. Howe Scale Co., 311 F.2d 502, 504 (7 Cir. 1963) ; N.L.R.B. v. Downtown Bakery Corp., 330 F.2d 921 (6 Cir. 1964).

acceptable reason assigned as the sole basis for the Company's alleged good faith doubt, the pattern of dogged resistance to unionization warranted the Board's rejection of that defense and supported the Board's conclusion that the Company was pursuing a policy hostile to the collective bargaining principle inherent in the Act.

At the unfair labor practice hearing in connection with the charge of failure to bargain the Company was permitted to raise an issue as to the current appropriateness of the Bluefield unit here involved in view of certain operational changes subsequent to the 1963 representation proceeding. We have reviewed the evidence and we find substantial support for the Board's conclusion that the major factors which supported the Board's earlier approval of a separate Bluefield unit were continuing. On the whole record we find no merit in the challenge to the appropriateness of the unit for collective bargaining.

For the reasons herein stated we conclude that the Board's order should be enforced.

Enforcement granted.