**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROAD STREET HOSPITAL AND MEDICAL CENTER, Respondent.**

**No. 19488.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 18, 1971.

Decided Dec. 14, 1971.

Howard Hay, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for respondent.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

■ In N. L. R. B. v. Frick Co., 423 F.2d 1327 (3d Cir. 1970), we held that a bargaining relationship established by voluntary recognition is irrebuttably presumed to continue for a reasonable period of time. We indicated that the effect of voluntary recognition of majority status was no different from that achieved as a result of a Board-certified election. This petition for enforcement of a Board order requires us to decide whether the *Frick* presumption should be applied where the voluntary recognition was never reduced to writing. We hold the *Frick* rationale applicable and will enforce the Board's order.

The Board found that following an authorization card check, David Weissman, administrator of the Broad Street Hospital, orally recognized as a bargaining unit for the hospital, Local 1199, National Organizing Committee of Hospital and Nursing Home Employees. Subsequently, union representatives met on several occasions with Weissman and other hospital officials to formulate a bargaining agreement. A negotiated contract proposal was ratified by the employees, but Weissman died prior to its formal acceptance by the hospital. Thereafter, hospital officials refused to meet with the union's negotiator, contending that most of the hospital employees in the bargaining unit had submitted decertification forms, and that a second union now claimed the right of representation. Because the hospital failed to execute a negotiated collective bargaining agreement, Local 1199 filed an unfair labor practice.

After holding two meetings with its employees, without participation by either union, the hospital raised wages, provided free hospitalization, and instituted a formal vacation program. Local 1199 withdrew the unfair labor practice and substituted a new charge that the hospital's refusal to bargain and its unilateral changes in wages constituted an unfair labor practice.

The hospital has consistently contended that Weissman lacked authority to bind the hospital. However, the Board found the following: that the hospital was owned by a partnership; that by the terms of the partnership agreement Weissman was a partner and also the administrator, authorized to execute the "administrative functions of the partnership;" that hospital management was entrusted to Weissman and Dr. Shubin, the medical director, each of whom served on a five-man executive committee; that "Weissman orally extended recognition to the union;" that thereafter the hospital, through Weissman and Dr. Shubin, conducted bargaining sessions which resulted in a written agreement approved orally by Weissman; and that during these negotiations Weissman was represented by the hospital's attorneys. Furthermore, the Board adopted a finding by the trial examiner that "Weissman acted within the scope of his authority in recognizing and engaging in contract negotiations with the Union, or, at least, that his acts were acquiesced in and ratified by the respondent." The Board found that the hospital's refusal to bargain with Local 1199 and its unilateral institution of wage increases and new hospitalization and vacation programs constituted violations of Section 8(a) (5) and (1) of the Act.

The Board seeks enforcement of its order requiring the hospital to bargain with the union and to cease and desist from unilaterally changing wages and other conditions of employment.

■ The hospital conceded at oral argument that recognition *vel non* is a question of fact. Accordingly, our scope of review on this issue is limited to whether this finding is supported by substantial evidence. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 (1951); N. L. R. B. v. Wing & Wheels, Inc., 324 F.2d 495 (3d Cir. 1963). Independent review persuades us that the finding of recognition was supported by such evidence.[1]

In *Frick,* we stated:

[W]e think the Board is free to determine that the rebuttable presumption of continued majority status evolved for certified unions should also apply in the case of unions voluntarily recognized. This is an area which involves the weighing of two conflicting goals of national labor policy: preserving employees' free choice of bargaining representatives, and providing stability for established bargaining relationships. In this situation we believe that "the Board should be left free to utilize its administrative expertise in striking the proper balance." N.L.R.B. v. Montgomery Ward & Co., 399 F.2d 409, 412 (7 Cir. 1968).

423 F.2d at 1332.

What we said in *Frick* controls this case. We respect the fundamental principles that employees should be given maximum opportunity to select or reject bargaining representatives, and that trade union representation must reflect

1. "Well established concepts of partnership doctrine impute the knowledge and actions of one partner to all others," Friend v. H. A. Friend & Co., 416 F.2d 526, 533 (9th Cir. 1969). See also In re Decker, 295 F.Supp. 501 (W.D.Va. 1969) aff'd, Woodson v. Gilmer, 420 F.2d 378 (4th Cir. 1970). In any event, in view of the history of the bargaining sessions, with Weissman acting as the hospital spokesman, it can be said that the hospital led Local 1199 to believe Wiessman had the necessary authority. N.L.R.B. v. General Metal Products Co., 410 F.2d 473 (6th Cir.), cert. denied, 396 U.S. 830, 90 S.Ct. 83, 24 L.Ed.2d 81 (1969).

the will of the bargaining unit fairly achieved through democratic processes. Indeed, it is unrealistic not to recognize that there are points in time in a given labor dispute when a particular union can be said to have lost its majority status. This is especially true, as here, where the heretofore unorganized workers find themselves courted by competing unions. Because the factors of tradition and custom are not present to cement loyalties, day-to-day changes in attitudes are to be expected.[2]

■ However, it is precisely under such conditions that the dangers of instability, wrought by the absence of an established bargaining unit, are most severe. Thus, whether the employer's bona fide recognition of a union's majority status be oral or written, it must be binding for the same reasons we enunciated in *Frick:* the inability of all parties to the collective bargaining process to rely on such recognition would produce an uncertainty potentially generative of strife and discord in industrial relations. Furthermore, the very real possibility of employer interferences with established majority status would exist. In fact, in implementing the congressional prohibition against unfair labor practices, the Board, with Supreme Court approval, "many times has expressed the view that the unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' mor-

ale, deters their organizational activities, and discourages their membership in unions." Frank Bros. Co. v. N. L. R. B., 321 U.S. 702, 704, 64 S.Ct. 817, 818, 88 L.Ed. 1020 (1944). Voluntary recognition by employers of bargaining units would be discouraged, and the objectives of our national labor policy thwarted if recognition were to be limited to Board-certified elections, or if the judiciary were to impose formalisms in the recognition process not deemed necessary by the Board.

There are no substantive policy considerations which justify a distinction between written or oral recognition. So long as the Board is willing and able to determine the *fact* of recognition from the entire record, the judiciary should not dilute the efficacy of the Board's action. In this case, the Board has evidenced not only a respect for the informal nature of the recognition process, but further, has endorsed the presumption of continued majority status so "that union membership be kept intact during delays incident to hearings." *Franks, supra,* 321 U.S. at 704, 64 S.Ct. at 818. Under these circumstances, we will not interfere with the Board's approval of the method of recognition, nor with its determination of the fact of recognition and the consequences thereof, since such determination is supported by substantial evidence.

■ Finally, the hospital has attempted to draw a distinction between a

---

2. The hospital raises vague contentions that such changes did indeed occur. But its assertions of union decertification by its employees and the appearance of a rival union lose their force in the hospital's own statement of facts. The new hospital administrator, Jack Docktor, was presented with a "stack of petitions," which, by his own admission, he "did not examine." The hospital represents merely that "he was told that they were authorization card withdrawal forms." No express allegation of loss of majority status is made; indeed, the only substantiation offered, in percentage terms, is based upon "the size of the pile" of the forms. Reference to a second union is limited to third-hand allegations that "prior to his death, Mr. Weissman had been speaking to a Teamster local."

The manifest evanescence of such allegations was duly recognized by the trial examiner, who rejected the assertions of decertification and concluded that "it is also perfectly clear that no probative evidence was adduced that at the time of the card check or, indeed, at any subsequent time, any rival union made any conflicting claim to represent the employees."

loss of majority status which occurs after the wrongful refusal to bargain, as in *Franks, supra,* and the case at bar. Although we have already expressed serious doubt concerning this alleged loss of majority status, we are not persuaded, in any event, that the record supports the finding that the loss occurred prior to one of the unfair labor practices. Moreover, we believe that the effect of such a distinction is not to be resolved by the judiciary. " 'It is for the Board and not the courts, however, to make that determination, based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity . . . . [drawing] on a fund of knowledge and expertise all its own. . . .' " N. L. R. B. v. Easton Packing Co., 437 F.2d 811, 814 (3d Cir. 1971), citing N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 612, n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). For the same reasons, we are not persuaded that the courts should distinguish between acts of employees amounting to rejection of the union as alleged here, or conduct opposing a strike, as in *Frick* and *Easton.* The desirability of keeping union membership intact during the Board proceedings has been decided by the Board in this case to be the preferred method of implementing national labor policy. If the Board believes that this consideration is so strong as to make irrelevant these factual distinctions, we will not disturb its choice of methods "to foreclose . . . frustrations of the Act." *Franks, supra,* 321 U.S. at 705, 64 S.Ct. at 819.

The Board has, as we observed in *Frick, supra,* struck the balance between the conflicting goals of national labor policy—free choice of representatives and providing stability for established bargaining relationships. We will not disturb that balance.

The order of the Board will be enforced.