**TOLTEC METALS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 73-1209.

United States Court of Appeals,
Third Circuit.

Argued Oct. 25, 1973.

Decided Jan. 25, 1974.

John J. Bracken, Bracken & Craig, Newark, N. J., for petitioner.

Fredric Sagan, Marcel Mallet-Prevost, N.L.R.B., Washington, D. C., for respondent.

Before McLAUGHLIN, GIBBONS and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This petition involves the basic duty of an employer to continue to bargain with a union whose representative status it has orally recognized even though the recognition was solely on the basis of a check of union authorization cards. The employer contends that its subsequent "good faith doubt" of the validity of a number of the cards and the absence of any independent unfair labor practice on its part relieves it of any duty to continue bargaining until certification following a secret Board election. The NLRB found that the refusal of the employer to bargain collectively with the Union constituted an unfair labor practice and ordered the employer to bargain in good faith.

The employer, Toltec Metals, Inc., petitions this court for review of the

Board order pursuant to § 10(f) of the National Labor Relations Act as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.) and the Board has made cross-application for enforcement of its order pursuant to § 10(f) of the Act. Since we find that the Board's findings are supported by substantial evidence and Toltec's legal contentions are without merit, we grant the cross-application for enforcement of the order and deny the petition for review.

Toltec is a New Jersey corporation [1] which manufactures, sells and distributes steel electrical enclosures and related products. In response to an employee's request, Local 569, Sheet Metal Workers International Association, AFL–CIO (the Union), sent representatives to the Toltec plant to solicit employees to sign union authorization cards. On May 22, 1972, the Union sent a telegram to Robert Figliuolo, Vice President of Toltec, stating that the Union represented a majority of the production and maintenance employees in the plant.[2]

On May 24, Silverstein, president of the Union, visited the plant and requested of Figliuolo that the company recognize the Union. After Figliuolo requested further proof that the Union represented a majority of workers in the unit, Silverstein showed him authorization cards signed by ten of the sixteen employees in the unit. As Figliuolo testified at the later hearing,

> I made a conclusion that he [Silverstein] had a majority of people and that is why I scheduled a meeting. As far as I was concerned at that time it was a legal majority . . .

A negotiating session was scheduled for May 30 and postponed until June 2. Prior to that meeting, two of the employees in the plant who allegedly knew little or no English and who had signed authorization cards told Figliuolo that they wished to have their names re-moved from the Union list. According to Figliuolo's testimony at the hearing, these employees also told him that they had been told (presumably by someone who had sought their signatures to the cards) they could not continue to work for the company unless they signed the authorization cards. Figliuolo related this incident to Silverstein on June 2. Silverstein responded that the employees could not have been threatened by the Union because this was not a Union practice. Silverstein offered to reassure the two employees, but Figliuolo refused to divulge their names.

A bargaining session then took place (June 2) with five Union and two employer representatives, including Figliuolo and Silverstein. The parties discussed specific articles contained in the Union's standard agreement, a copy of which had previously been given to Figliuolo. Although there is some dispute as to which provisions were agreed to during the hour and a half negotiating session, the Trial Examiner found that agreement was reached on the standard Union recognition clause, the union security clause, and other non-economic provisions, including the establishment of a plant shop committee. When Toltec claimed financial hardship, the parties agreed, at the company's request, to postpone discussion of economic issues until June 5, by which time a Union accountant would have examined the company's financial records and reported to the Union. Immediately following the bargaining session, Silverstein reported on it at a meeting with all but one of the employees in the bargaining unit present. No employee expressed any interest in disassociating himself from the Union.

Before the scheduled resumption of negotiations on June 5, Figliuolo informed Silverstein that two additional employees had informed him that they did not desire to belong to the Union

---

1. All transactions concerning this case occurred in New Jersey, and the jurisdiction of the Board is not contested.

2. The parties have stipulated that the 16 production and maintenance employees constitute an appropriate bargaining unit.

and that the company was going to file an RM petition with the Board. Figliuolo refused to resume bargaining with the Union, and Toltec has since not bargained. The next day Figliuolo filed a petition with the Board requesting a Union election among company employees, and the Union filed an unfair labor practice charge with the Board alleging Toltec's refusal to bargain since June 5.

On the basis of these facts, the Board concluded that Toltec had violated § 8(a)(5) and (1) of the National Labor Relations Act,[3] by refusing to bargain collectively with a union that it had previously recognized voluntarily.[4] The resulting order requires that Toltec cease and desist from refusing to bargain with the Union, and affirmatively requires that Toltec bargain upon request with the Union.

 It is clear that an employer who has not committed a contemporaneous unfair labor practice, when confronted initially with a union request for recognition based on authorization cards, may decline immediate recognition of the union and insist on a secret ballot election. NLRB v. Gissel Packing Co., 395 U.S. 575, 591, 600, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); NLRB v. Frick Company, 423 F.2d 1327, 1330 n. 6 (3d Cir. 1970). In the present case, however, the Board contends that Toltec did in fact voluntarily recognize the Union, and that this initial recognition prevents the company from thereafter withdrawing recognition. The distinction between refusal to recognize in an organizational context and withdrawal of recognition from a validly recognized union is well established. *See Frick, supra,* 423 F.2d at 1330 n. 6.

Toltec first contends that it never recognized the Union and that therefore its refusal to bargain on June 5 did not constitute an unfair labor practice. Toltec argues that, particularly in light of its inexperience in labor matters, its actions in setting up and attending the previous bargaining session should be interpreted consistently with what it alleges were continuing good faith doubts that the Union in fact represented a majority of employees in the unit. Under this theory, we are asked to interpret these prior activities of Toltec as merely tentative discussions pending clarification of the Union's representative status.

In support of its position that it never recognized the Union, Toltec relies heavily on Figliuolo's testimony that because of his doubts as to the validity of a number of the union authorization cards, his negotiations with the Union representatives were merely tentative, "a time-saver pending recognition." The Trial Examiner, however, relying on the comparative demeanor of the witnesses and the poor memory displayed by Figliuolo, expressly refused to credit Figliuolo's testimony in this regard. Furthermore, the Trial Examiner found inconsistencies between Figliuolo's testimony concerning his conversations with the allegedly non-English speaking employees, and his prior sworn affidavits. He also found it unlikely that if Figliuolo in fact considered the negotiations to be tentative, he would have permitted the Union accountant to examine the company's confidential financial records and to agree to negotiate further after the Union audit. Finally, Figliuolo admitted that at no time during the June 2 bargaining session did he state that he considered the negotiations to be tenta-

---

3. Sec. 8. (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.
 (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a).

61 Stat. 136, 140–41 (1947). [29 U.S.C. § 158(a)(1),(5).]

4. The Board decision, 201 NLRB No. 149, adopts in full the findings, conclusions, and order of the Trial Examiner.

tive, despite Silverstein's statement that "you are unionized."

■ We must uphold the Board's factual finding that Toltec did recognize the Union if the finding is supported by substantial evidence. NLRB v. Broad Street Hospital and Medical Center, 452 F.2d 302 (3d Cir. 1971). In making this determination we must also keep in mind that "the responsibility to resolve issues of credibility is for the Board and not for the Court." NLRB v. Wings & Wheels, Inc., 324 F.2d 495 (3d Cir. 1963). Applying these standards, we are convinced that the record more than adequately supports the Board's finding. Figliuolo's assertion that he considered the negotiations to be tentative was a matter of credibility for the Trial Examiner. Moreover, the assertion was inherently suspect in light of Figliuolo's other statements and actions at the time.

Toltec next contends that even if it be deemed to have recognized the Union, its good faith belief that a number of the union recognition cards were fraudulently procured justifies its refusal to continue bargaining. We reject this contention.

First, even if a good faith doubt in the Union's continued majority status would have justified Toltec in refusing to continue bargaining, Toltec has failed to sustain its burden that it "come forward with evidence casting 'serious doubt on the union's majority status.'" *Frick, supra*, 423 F.2d at 1331. As has been succinctly stated in NLRB v. Rish Equipment Co., 407 F.2d 1098, 1101 (4th Cir. 1969),

> To meet this burden "requires more than an employer's mere mention of [its good faith doubt] and more than proof of the employer's subjective frame of mind." What is required is a "rational basis in fact." [5]

■ In the present case, Toltec submitted no evidence to support its contention of good faith doubt other than Fig-

liuolo's testimony which the Trial Examiner found confusing and unpersuasive. Although the employees who had complained to Figliuolo were present at the hearing, Toltec did not call any of them as witnesses. Nor did Toltec introduce evidence in support of its contention that it believed the poor English of certain of its employees made it unlikely that they had understood what they signed. Toltec has not by any minimum standard sustained its burden of demonstrating good faith doubt in the continuing majority status of the Union.

In any event, however, even a good faith doubt of the Union's continuing majority status would not have justified Toltec's withdrawal of Union recognition on June 5. In Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), a union had won a representative election by a vote of eight to five. Just prior to Board certification of the union, nine of the thirteen employees signed a letter to the employer stating that they were not in favor of being represented by the union. The Board found that the company's ensuing refusal to bargain with the union after certification constituted an unfair labor practice. The Supreme Court upheld the Board, approving of the Board's policy of not permitting an employer to challenge the majority status of a certified union for a reasonable period of time, normally one year, following Board certification.

■ In effect, therefore, *Brooks* establishes an irrebuttable presumption of continued union majority status for a reasonable time, normally one year, following certification. The courts have held that the presumption continues after that period, but it can then be rebutted by an employer's showing of good faith doubt in the continuing majority status of the union. *Frick, supra*, 423 F. 2d at 1330–1331. In *Frick* itself, we upheld the Board policy of applying an irrebuttable presumption of continued ma-

5. Quoted with approval by us in NLRB v. Frick Company, 423 F.2d 1327, 1331 (3d Cir.

1970). Also see cases cited in footnote 7, 8 and 9 of *Frick, supra*.

jority status for a "reasonable period of time" to voluntarily recognized unions, and applying a rebuttable presumption thereafter. 423 F.2d at 1332. In *Broad Street, supra,* we held that the irrebuttable presumption which we upheld in *Frick* applies equally to a voluntarily recognized union even where the recognition was never reduced to writing. Under *Broad Street,* therefore, Toltec had no justification for withdrawing recognition even if it could show good faith doubts as to the union's continuing representative status.[6]

Toltec contends, however, that the *Broad Street* doctrine should not be applied because Toltec is not accused of committing any unfair labor practices aside from the refusal to bargain, and that therefore there is no danger that the alleged loss of union majority status is due to unfair labor practices of the employer. This argument assumes that *Broad Street* and the earlier cases were based solely upon the fear that employers would first destroy union majority status by unfair labor practices, and thereupon justifiably maintain a good faith doubt as to that majority status. However, *Broad Street* emphasized that voluntary recognition should also be enforced because

> the inability of all parties to the collective bargaining process to rely on such recognition would produce an uncertainty potentially generative of strife and discord in industrial relations.

452 F.2d at 305. In the necessary interests of labor stability in the bargaining process which we recognized in both *Frick* and *Broad Street,* we decline to hold that an employer may at any time withdraw a voluntarily granted union recognition as long as it commits no independent unfair labor practice. The improper withdrawal of recognition itself constitutes the unfair labor practice.

Furthermore, as pointed out by the Board, Toltec's view if accepted would discourage unions from accepting voluntary recognition even if the employer freely conceded the union's majority status and began bargaining, since only a Board conducted election could bind the employer. The Board rightly concluded that such a consequence would disrupt the industrial peace that the Act was intended to foster. As we stated in *Frick* and *Broad Street,*

> The Board has . . . struck the balance between the conflicting goals of national labor policy—free choice of representatives and providing stability for established bargaining relationships. We will not disturb that balance.

452 F.2d at 306.

The petition for review will be denied and the cross-application for enforcement will be granted.

McLAUGHLIN, Circuit Judge, dissents.

---

6. There is no contention that the period of less than a week constituted a reasonable period of time and, if made, the contention would have been implausible.