PATROLMAN'S BENEVOLENT ASSOCIATION OF MONT-
CLAIR, NEW JERSEY, LOCAL NO. 53, PLAINTIFF-AP-
PELLANT, v. TOWN OF MONTCLAIR, A MUNICIPAL COR-
PORATION AND THEODORE MACLACHLAN, DIRECTOR
OF DEPARTMENT OF PUBLIC SAFETY, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1974—Decided December 20, 1974.

506

Before Judges LEONARD, SEIDMAN and BISCHOFF.

*Mr. James R. Zazzali* argued the cause for appellant (*Messrs. Zazzali & Zazzali,* attorneys; *Mr. Lawrence A. Whipple, Jr.,* on the brief).

*Mr. Frank X. McDermott* argued the cause for respondents (*Messrs. Apruzzese & McDermott,* attorneys; *Mr. Richard C. Mariani,* on the brief).

The opinion of the court was delivered by

BISCHOFF, J. A. D. Plaintiff Patrolman's Benevolent Association of Montclair, New Jersey, Local No. 53 (PBA) filed a complaint alleging that defendants Town of Montclair (Montclair) and Theodore Maclachlan, Director of the Department of Public Safety, had violated *N. J. S. A.* 34: 13A–5.3 by refusing to "negotiate in good faith the terms and conditions of employment of the police officers" and sought a judgment directing defendants to negotiate pur-

suant to the statute. In the complaint the PBA claimed to be "the designated and selected representative of all police officers employed by * * * Montclair for the purpose of collective negotiations with * * * Montclair." An order to show cause was obtained by plaintiff. Defendants filed an answer in which they asserted that a "serious question" had been raised regarding plaintiff's legal standing to maintain the action because of its failure to comply with the rules and regulations promulgated by the Public Employees Relations Commission (PERC) pursuant to the authority delegated to it by *N. J. S. A.* 34:13A–11. In their answer defendants relied on the alleged failure of plaintiff to follow the proceedings prescribed by *N. J. A. C.* 19:11–1.1 and *N. J. A. C.* 19:11–1.14, which, it is contended, establish the procedure which must be followed in determining the majority representative of police officers.

The trial judge, in an opinion reported at 128 *N. J. Super.* 59, dismissed the complaint for the reason that plaintiff had not exhausted available administrative remedies.

The judge stated the threshold issue for determination was "whether plaintiff's disputed status as negotiating representative may be resolved by the court without a prior exhaustion of administrative remedies," *id.* at 60, and further stated that "the relief sought is recognition of plaintiff's representative status" through the procedure provided under PERC's regulations, *id.* at 65, and since plaintiff's status was questioned, the dispute could only be resolved by following the appropriate administrative procedure provided by *N. J. A. C.* 19:11–1.1 and 1.2.

■ We disagree. It is not necessary that PERC intervene in the determination of the exclusive representative in all cases. On the contrary, *N. J. S. A.* 34:13A–5.3 provides in part that "the commission [PERC] shall not intervene in matters of recognition and unit definition except in the event of a dispute." *State v. Prof. Ass'n of New Jersey Dept. of Ed.,* 64 *N. J.* 231, 243 (1974); *Bowman v. Hackensack Hospital Ass'n,* 116 *N. J. Super.* 260, 288–290

(Ch. Div. 1971). Another provision of the same statute provides:

> * * * Representatives *designated or selected by public employees* for the purposes of collective negotiation by the majority of the employee in a unit appropriate for such purposes *or* by the majority of the employees voting in an election conducted by [PERC] * * * shall be the exclusive representatives for collective negotiation concerning the terms and conditions of employment of the employees in such suit. [Emphasis supplied]

Furthermore, the procedure established by *N. J. A. C.* 19: 11–1.14 provides that whenever a public employer has been requested to recognize an employee organization as the exclusive representative of a majority of the employees, the public employer and the employee organization may resolve such matters without the intervention of the commission. That same regulation establishes a procedure by which the question of the identity of the representative may be resolved.

The statute establishes two methods by which the standing as "representative" of a group of employees may be obtained: either (a) by being designated or selected, or (b) by winning an election supervised by PERC.

While the procedure outlined in regulations adopted by PERC was not followed, it by no means follows that the parties did not, by their conduct, accept plaintiff as the exclusive designated or selected representative of the majority of the employees.

The conclusion of the trial judge was based in part upon the assumption that there existed a *bona fide* dispute concerning the status of plaintiff as the "designated and selected representative." We conclude such an assumption is not justified on the record before us.

On September 17, 1973 plaintiff addressed a letter to Montclair indicating a desire to negotiate a collective bargaining agreement for 1974 and to include in the agreement a pay raise and fringe benefits. It requested some indica-

tion from Montclair of alternate dates when said meeting could be held. Defendant responded by letter of September 24, 1973, suggesting the meeting be held after elections. Again, in November 1973 plaintiff requested a meeting for the purpose of collective negotiations. On December 11 plaintiff met with the mayor of Montclair and a commissioner. The parties at that time agreed to meet for the purpose of negotiations as soon as possible. Plaintiff delivered to defendant a copy of its proposal at this meeting. This was followed by negotiating sessions occurring on January 10, January 22 and January 30. On February 13, 1974 plaintiff requested another meeting as soon as possible but received no response to this request. No further meetings or negotiations were held and, on February 19, 1974, defendant Montclair — without consulting the PBA — passed an ordinance establishing the salaries of police officers.

Defendants for the first time questioned the status of plaintiff to conduct the negotiations for police officers in the answer which they filed to plaintiff's complaint. While the date of filing this answer has not been furnished to us, the affidavit verifying it was dated March 13, 1974. In support of its contention that there exists a serious question concerning plaintiff's status, defendants cite no facts, by means of affidavit or otherwise, and simply refer to the failure of plaintiff to follow the provisions of *N. J. A. C.* 19: 11–1.1 and 1.2 and *N. J. A. C.* 19 :11–1.14.

Notwithstanding these provisions of the administrative codes it is clear that defendant Monclair, by its actions commencing September 1973 and continuing into February 1974, has recognized plaintiff as a designated and selected representative of all police officers and by so doing has conferred at least *de facto* status on plaintiff. Basic principles of fairness dictate that if Montclair was going to question the right of plaintiff to act as the majority representative of the police officers, it should have done so promptly and not acted so as to lull plaintiff over a period

of months into a false sense of security and into thinking it had recognition.[1]

Defendant seeks to justify its actions by reference to that section of *N. J. S. A.* 34:13A–5.3 which provides:

* * * When no majority representative has been selected as the bargaining agent for the unit of which an individual employee is a part, he may present his own grievance either personally or through an appropriate representative or an organization of which he is a member and have such grievance adjusted. * * *

The argument is made that if an employer talks pursuant to this statutory permission, it is not tantamount to recognition.

Defendant cannot take refuge in this section as justification for its actions: first, a majority representative had been selected; second, plaintiff is not presenting an individual grievance but, rather, has been attempting to negotiate a contract for all its members, and, third, defendant never questioned the status of plaintiff as the majority representative prior to the filing of an answer and never relied on this provision of the statute as the basis for its action.

For these reasons we conclude that the trial judge erred in holding that plaintiff lacked status to maintain this action. However, for a different reason, we hold that his action in dismissing plaintiff's complaint must be affirmed.

*N. J. S. A.* 34:13A–6(b) provides in part as follows:

---

[1]Further support for this argument is obtained from an examination of the procedure available under the National Labor Relations Act. The New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–5.1 *et seq.*, parallels the National Labor Relations Act, 29 *U. S. C. A.* § 141 *et seq.*, and can be interpreted in light of that act. *Lullo v. Intern. Ass'n of Fire Fighters*, 55 *N. J.* 409, 424 (1970) ; *Toltec Metals, Inc. v. N. L. R. B.*, 490 *F.* 2d 1122 (3 Cir. 1974), holds that where an employer orally recognizes a union as the employees' representative, it can not later withdraw recognition and refuse to bargain.

Whenever negotiations between a public employer and an exclusive representative concerning the terms and conditions of employment shall reach an impasse, the commission, through the Division of Public Employment Relations shall, upon the request of either party, take such steps as it may deem expedient to effect a voluntary resolution of the impasse.

The record discloses that an impasse was reached between the parties after negotiations had been underway. There is no charge that Montclair refused to negotiate at all. In this respect the situation differs from that which existed in the case of *PBA #208 v. Camden Cty. Bd. of Freeholders,* 124 *N. J. Super.* 119 (Law Div. 1973). There the county, without prior negotiations, put into effect a resolution changing the designation of various employees. The union sought an injunction against the county putting such a change in effect, and further sought an order compelling the county to negotiate. The court held that since no negotiations had been carried on between the parties an impasse had not occurred and the right of access to PERC under *N. J. S. A.* 34:13A–6(b) did not exist. The court accordingly ordered the parties to negotiate and restrained the effective operation of the resolution. Here plaintiff does not seek to restrain the operative effect of the ordinance setting the salaries.

Since here there was no refusal to talk but rather a cessation of talks, an impasse occurred and there is available to the parties an administrative remedy by way of petition to PERC under the cited statute. There being such a remedy, plaintiff's action was properly dismissed for failure to exhaust the administrative remedies before resorting to the courts. *Ward v. Keenan,* 3 *N. J.* 298–302 (1949) ; *Harris v. Salem Cty. Planning Bd.,* 123 *N. J. Super.* 304, 308 (App. Div.), certif. den. 64 *N. J.* 152 (1973).

One additional item must be mentioned. Plaintiff complains of action taken by Montclair on February 23, 1974 by way of a verbal order eliminating compensatory time off for overtime hours worked. Plaintiff contends this is a new rule or modification of an existing rule governing working

conditions and that it was promulgated without prior negotiations, in violation of *N. J. S. A.* 34:13A–5.3.

Examination of the verified complaint discloses this subject matter was discussed in the negotiating session of January 22, 1974. On the record before us this appears as one of the items involved in the impasse. The administrative remedy available to plaintiff with respect to the impasse which developed over pay raises and fringe benefits is also available to plaintiff where the dispute concerns rules and regulations respecting working conditions.

The judgment is affirmed.