NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WASHINGTON MANOR, INC., d/b/a
Washington Manor Nursing Center
(North), Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WASHINGTON MANOR, INC., d/b/a
Washington Manor Nursing Center
(South), Respondent.

Nos. 74–1881, 74–1882.

United States Court of Appeals,
Sixth Circuit.

July 24, 1975.

Thomas J. Harrington, Pickerel, Schaeffer & Ebeling, William R. Neale, Dayton, Ohio, for respondent.

Elliott Moore, Associate Deputy Gen. Counsel, N.L.R.B., Paul J. Spielberg, David S. Fishback, Washington, D.C., for petitioner.

Before CELEBREZZE, MILLER and ENGEL, Circuit Judges.

CELEBREZZE, Circuit Judge.

This case presents the question of whether Washington Manor, Inc.'s (Company) refusal to bargain with an incumbent union was based on a reasonably grounded good faith doubt of the union's support by a majority of the employees in two bargaining units.

The Company operates two nursing homes in Dayton, Ohio, Washington Manor North (North) and Washington Manor South (South). The National Union of Hospital and Nursing Home Em-

ployees, Local 1199H, Retail, Wholesale and Department Store Union, AFL–CIO (Local 1199H), was selected as representative for a bargaining unit consisting of nurses' aides, orderlies, housekeeping employees, maids, cooks, kitchen employees, and dietary employees at North on November 13, 1970, by a vote of 27–24. Local 1199H was certified by the Board as the exclusive bargaining agent for this unit on August 27, 1971. A collective bargaining agreement between the Company and Local 1199H with a term from May 15, 1972, through May 14, 1973, covering the bargaining unit at North was consummated on June 6, 1972.

A representation election was held at South on October 20, 1971 among employees performing the same tasks as those who opted for Local 1199H at North. Local 1199H was selected at South by a vote of 40–17. The Board certified Local 1199H on December 22, 1971. As with North, on June 6, 1972, a collective bargaining agreement was signed which covered South. This agreement spanned May 14, 1972, through May 13, 1973.

On March 3, 1973, the Union sent the administrators at North and South letters requesting negotiations for a new contract. The administrators consulted with the Company's president and on May 8, 1973, Thomas Duffy, vice president of the Company and administrator of South informed Local 1199H that the Company would not bargain with the union at either North or South. Duffy testified that the Company's decision not to bargain with Local 1199H was based on a good faith belief that the Union no longer enjoyed majority support among members of the bargaining unit. At the time of its refusal to negotiate the Company cited the following reasons as the basis for its belief that the union lacked majority support: the high employee turnover rate, the percentage of employees electing to have the Company checkoff union dues, employee questions about how to withdraw from the union, and, at

North, the closeness of the original election.

Local 1199H filed an unfair labor practice charge on June 21, 1973. Following a hearing, the Administrative Law Judge issued two decisions, separately considering the Company's actions at North and South dated December 28, 1973. The Judge concluded that the Company acted improperly by withdrawing recognition of and refusing to negotiate with the union at both North and South. Exceptions were filed with the Board on February 19, 1974, and the Board issued its decision on June 11, 1974, adopting the findings, conclusions, and rulings of the Administrative Law Judge. The Board ordered the Company to bargain with the union at North and at South. The Board brings this action seeking enforcement of its orders.

The sole issue presented is whether the Company's refusal to negotiate with the union was based on a good faith assertion of reasonable doubt as to the union's majority status. The applicable standard for reviewing such "reasonable doubt" was stated in *Bally Case and Cooler, Inc., of Delaware v. NLRB,* 416 F.2d 902, 904–905 (6th Cir. 1969), *cert. denied,* 399 U.S. 910, 90 S.Ct. 2201, 26 L.Ed.2d 562 (1970):

> Absent special circumstances, a union enjoys an irrebuttable presumption of majority status for one year after its certification. Thereafter, the presumption is rebuttable, and an employer who has a reasonable basis in fact to doubt an incumbent union's majority status and who asserts that doubt in good faith may refuse to recognize and bargain with the union.

*See also Automated Business Systems v. NLRB,* 497 F.2d 262 (6th Cir. 1974).

█ The Company's refusal to negotiate with Local 1199H occurred more than one year after the union's certification; thus the union enjoyed a rebuttable presumption of majority.

In *Terrell Machine Co. v. NLRB,* 427 F.2d 1088, 1090 (4th Cir. 1970), *cert. de-*

*nied,* 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970), the Court stated:

> Upon expiration of the original certification year, a rebuttable presumption of representative status exists, and it is sufficient to establish *prima facie* a continuing obligation to bargain. *NLRB v. Rish Equipment Company,* 407 F.2d 1098 (4 Cir. 1969). See also, *NLRB v. Little Rock Downtowner, Inc.,* 414 F.2d 1084 (8 Cir. 1969); *NLRB v. Gulfmont Hotel Co.,* 362 F.2d 588 (5 Cir. 1966). The presumption may be overcome, according to these authorities, if the employer demonstrated that the union, in fact, no longer enjoyed majority support on the date of the refusal to bargain, or that the refusal to bargain was predicated upon a reasonably grounded good faith doubt of majority support.

The Seventh Circuit in *Zim's Foodliner, Inc. v. NLRB,* 495 F.2d 1131, 1139 (7th Cir. 1974), noted that Board orders based on the rebuttable presumption of union majority have been enforced on numerous occasions. *See, e. g., NLRB v. Tesoro Petroleum Corp.,* 431 F.2d 95 (9th Cir. 1970); *Terrell Machine Co. v. NLRB,* 427 F.2d 1088 (4th Cir. 1970), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970); *Bally Case & Cooler, Inc. v. NLRB,* 416 F.2d 902 (6th Cir. 1969), *cert. denied,* 399 U.S. 910, 90 S.Ct. 2201, 26 L.Ed.2d 562 (1970); *NLRB v. John S. Swift Co.,* 302 F.2d 342 (7th Cir. 1962).

Respondents in attempting to rebut the presumption that a majority of the employees in the bargaining unit support the union make two arguments. Respondents first argue that the Administrative Law Judge and the Board, in adopting his findings and conclusions, erred in the standard applied in determining whether Respondents' reasons for refusing to negotiate supported a reasonable doubt as to the union's majority status. Respondents argue that the Administrative Law Judge considered their reasons singularly but did not consider their cumulative force.

A reading of the Administrative Law Judge's opinions indicates that he considered the cumulative force of the factors cited by Respondents. In a number of the cases cited by the Judge in support of his decision, including *NLRB v. Little Rock Downtowner, Inc.,* 414 F.2d 1084 (8th Cir. 1969), the employer enumerated multiple reasons for doubting union majority status, and the Court noted that it was considering the cumulative force of these reasons.

Respondents next cite *National Cash Register Co. v. NLRB,* 494 F.2d 189 (8th Cir. 1974), and *Automated Business Systems v. NLRB,* 497 F.2d 262 (6th Cir. 1974), as mandating resolution of this dispute in their favor. The employer in *National Cash Register* cited as reasons for doubting the union's majority status not only decreasing checkoff percentages and high turnover, as cited by Respondents, but also noted the filing of a decertification petition supported by the requisite 30% of employees in the bargaining unit and noted that fifty employees out of two hundred at one plant had resigned from the union. In the instant case we have only vague and self-serving references to employee dissatisfaction by Company officials. The tangible evidence of numerous resignations and the filing of a valid decertification petition clearly distinguish *National Cash Register* from the instant case.

In *Automated Business Systems,* a decertification petition had been filed and the petitioning employees alleged that the petition was supported by a majority of employees in the bargaining unit. In the instant case we have no showing of employee dissatisfaction and *Automated Business Systems* is of little assistance.

The Company cites five reasons in support of its belief that the union as of March 1973 did not have majority status among employees in the bargaining unit: (1) union inactivity, (2) recent union efforts to sign-up additional members, as a concession that the union did not have majority membership, (3) the closeness of the original election, (4) the high turnover of employees, (5) the number

of checkoff cards filed with the Company as compared to the total number of employees in the North unit.

The Administrative Law Judge found that testimony of union officials and employees established that during the term of the bargaining agreement union meetings were held, union notices were posted, and a number of grievances were handled. The Judge concluded from this that the union had been as active as circumstances dictated. The Judge also noted that the Company did not include union inactivity as one of its reasons when it refused to negotiate with the union.

The Company's second reason, recent union efforts to sign new members, conflicts with its allegation of Union inactivity. Also there is a dispute as to whether the Company received information about sign-up efforts, as the employee who the Company claims relayed this information testified that she did not make such statements. In any event, the conversation in question took place on May 11, 1973, four days after the Company had formulated its doubt as to the union's majority status and three days after the Company notified the union of such doubt.

■ In the election of November 13, 1970, the employees at North opted for Local 1199H by a vote of 27–24. The closeness of that election was, as Respondent urges, a proper and relevant consideration in determining whether the employer entertained a good faith doubt of continuing majority support of the Union. The weight to be accorded it, however, was for the Board to determine, along with the other evidence before it. We may not deny enforcement merely because we might, in an independent evaluation, accord the vote results more weight than did the Board.

■ The Company also argues that the large turnover of employees at North, approximately 100% counting departures of replacement employees during the term of the agreement, brought in many new employees who might not support the union. A high turnover of employees unaccompanied by objective evidence that new employees do not support the union is no evidence of loss of majority status by the union. *Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131, 1141 (7th Cir. 1974); *NLRB v. Little Rock Downtowner*, 414 F.2d 1084, 1091 (8th Cir. 1969). *See also, Motor Valve & Mfg. Co. v. NLRB*, 149 F.2d 247 (6th Cir. 1945).

Thus we come to the final reason cited by Respondents for their doubt as to the union's majority support, the number of checkoff cards filed with the Company compared to the number of employees in the bargaining unit. In June 1972, at the time the collective bargaining agreement was executed, 49 percent of the employees in the unit at South and 40 percent of the unit employees at North had authorized checkoff of union dues. During the term of the agreement a low of 42 percent was reached at South and a low of 31 percent was reached at North. In May 1973, when the Company withdrew recognition, 44 percent of the unit employees at South and 38 percent of the unit employees at North had authorized checkoff. The bargaining agreement had a "maintenance of membership" clause but contained no requirement that new members join the union or opt for the checkoff system of paying their dues.

■ In reviewing a Board determination, if the undisputed facts relied on by the Board are open to conflicting inferences, we are not at liberty to draw an inference different from that drawn by the Board even if it might appear more plausible. *Bally Case and Cooler, Inc., of Delaware v. NLRB*, 416 F.2d 902, 906 (6th Cir. 1969), *cert. denied*, 399 U.S. 910, 90 S.Ct. 2201, 26 L.Ed.2d 562 (1970); *NLRB v. H & H Plastics Manufacturing Co.*, 389 F.2d 678 (6th Cir. 1968).

■ The Board's conclusions appear to be reasonable and supported by substantial evidence as found by the Administrative Law Judge. Therefore, enforcement is granted.